## THE STATE v. McCALL.

1. The breaking open the shutters of a window, and protruding the hand within them, is not such an entry as will constitute the crime of burglary, if the sash remain down, and the glass are not broken, so as to permit a violation of the security of the house.

2. The constitutional provision which authorizes one charged with a crime, to be heard by himself or counsel, does not confer the right to make a statement of facts, independent of, and not warranted by, the evidence.

The defendant was indicted for burglary, at a term of the Circuit Court of Mobile, commencing on the sixth Monday after the fourth Monday in September, 1842.

The cause was tried on the plea of *not guilty*, and certain questions of law reserved, which are referred to this Court as novel and difficult. These questions are thus stated, " In this case it was proved by the State, that the supposed burglary was committed by the defendant, in the mansion house of Mrs. Ann Vincent, in the city of Mobile. That between eleven and twelve o'clock at night, Mrs. Vincent had retired, and heard a noise at the window, indicating that force was being used to open the shutters, or blinds—that the window itself was fastened down, in such a manner that it could not be opened from without—that the shutters were also fastened in the ordinary way before Mrs. V. retired—that after hearing the noise without, alarm was given to a lodger in the house, who upon going out, found the defendant in the yard, near the window, the shutters of which had been opened, and were then standing open. After the witnesses had been examined, and the argu-

ments of counsel on both sides concluded, defendant's counsel asked the Court to allow defendant to make a statement to the jury—this the Court declined. The Court then charged the jury, that if they believed from the testimony, that the defendant, by the application of force, wrested open the window shutters, and his hands protruded beyond the line made by the shutters when shut, that that in law, was an entry, notwithstanding the sash remained down and the glass was unbroken."

" The prisoner was found guilty, and sentenced to imprisonment in the Penitentiary for the space of ten years.

ATTORNEY GENERAL, for the State, to show the charge of the Court to be correct, cited 2 East's P. C. 493 ; 2 id. 48 ; 1 Hale's P. C. 552 ; Foster's C. L. 108 ; 1 Hawk. P. C. 130-1-2; Russ. and R. C. C. 499.

Though the defendant had a constitutional right to be heard by himself and counsel, yet he could not be allowed to give evidence to the jury.

ROLLSTON, for the defendant. The defendant should have been allowed to make his statement to the jury. The constitution guarantees to every man the right to be heard by himself and counsel. [The State v. Hughes, 2 Ala. Rep. N. S. 102.]

It is clear upon authority, that the defendant did not make such a breach and entry into the mansion house, as to warrant his conviction of the crime of burglary. [1 Hale's P. C. 552-3; Hawk. P. C. 132, §11, 12 ; Roscoe's Crim. Ev. 254-8-9; Arch. Crim. Plead. 291-3.]

COLLIER, C. J.—The crime of burglary may be defined to be, the breaking and entering a dwelling house in the night time, with intent to commit a felony. For the purposes of this offence, it is said the term " dwelling house," comprehends all buildings within the curtilage or inclosure, &c. [1 Hale's P. C. 358, 559 ; Hawk. P. C. Ch. 38, §12 ; East's P. C. 492 ; id. 493, 501, 508.] The offence consists then in violating the common security of the dwelling house in the night time, for the purpose of committing a felony. [Commonwealth v. Ste-

phenson et al, 8 Pick. Rep. 354.] But what is a violation, is not in all cases entirely clear; the authorities discovering a great want of harmony. It is not our purpose now, to notice the many adjudications with which the books abound; but only to consider a few of those most pertinent to the case in hand, and then state the principle which must control our decision.

In Rex v. Bailey and another, [Russ. and R. C. C. 341,] it appeared that a sash window belonging to a dwelling house, was fastened in the usual way, by a latch, from the bottom of of the upper sash to the top of the lower one; and that there were inside shutters, which were fastened. One of the prisoners broke a pane of glass in the upper sash of the window, and introduced his hand within, with the intention to undo the latch by which the window was fastened. While he was cutting a hole in the shutter with a centre bit, and before he had undone the latch of the window, he was seized. All the Judges were of opinion, that the introduction of the hand between the window and the shutter to undo the window latch, was a sufficient entry to constitute a burglary.

In Rex v. Rust and Ford, [1 Moody's C. C. 183,] the facts were these: the glass sash window was left closed down, but was thrown up by the prisoners; the inside shutters were fastened, and there was a space of about three inches between the sash and the shutters, and the shutters themselves were about an inch thick. It appeared that after the sash was thrown up, a crow-bar had been introduced to force the shutters, and had been not only within the sash, but had reached to the inside of the shutters, as the mark of it was found on the inside of the shutters. The Judges were of opinion that this was not a case of burglary, as it did not appear whether any part of the hand was within the window, although the aperture was large enough to admit it.

Any, the least entry, is sufficient by means of the hand, or foot, or even by an instrument with which it is intended to commit a felony. [East's P. C. 490; Foster's C. L. 107; 1 Hawk. P. C. Ch. 38, §7; 1 Hale's P. C. 555.] But the entry, it is said, must appear to have been made with the immediate intent to *commit a felony*, as distinguished from the previous intent to *procure admission* to the dwelling house. Where it

appeared that a centre-bit had penetrated through the door, from chips found in the inside of the house, yet as the instrument had been introduced for the purpose of breaking, and not for the purpose of taking the property or committing any other felony, it was held the entry was incomplete. [1 Leach's C. L. 452; East's P. C. 491.]

The citations from the crown cases, it must be admitted, lend their support to the charge of the Circuit Judge to the jury. The only difference being, that there was a breach and entry of the sash, while here, the breach and entry was of the blinds, which were the outer protection. This, it is conceived, cannot require the application of a different principle. It cannot be, that the common security of the dwelling house is violated by breaking one of the shutters of a door or window which has several. True, it weakens the security which the mansion is supposed to afford, and renders the breach more easy; but as additional force will be necessary before an entry can be effected, there can, under such circumstances, be no burglary committed.

Suppose the shutter of a door made by placing plank upon each other until it is two or three double, if the thickness of one of the plank be removed by one intending to commit a burglary, and an entry thus far made, can it be said that the offence was completed? What, in point of principle, is the difference between such a case, and one where there are several shutters, an inch or two apart from each other. In neither case can such an entry be made as will enable the aggressor to commit a felony. In such cases the entry may be said to be made with the intent rather to *procure admission into the dwelling house*, than to *commit a felony*, which we have seen is an indispensable constituent of the crime of burglary.

To constitute burglary, an entry must be made into the house with the hand, foot, or an instrument with which it is intended to commit a felony. In the present case there was nothing but a breach of the blinds, and no entry beyond the sash window. The threshold of the window had not been passed, so as to have enabled the defendant to consummate a felonious intention; and according to the principle we have laid down, the charge to the jury was erroneous.

The constitution guarantees to every one charged with the

commission of a crime, the right to be heard by himself and counsel, but it does not permit the accused to make a statement of facts to the jury, unless it be authorized by the evidence adduced. Here the reasonable inference perhaps is, that the statement proposed to be made was not in the course of a legal defence; at any rate the leave of the Court was not asked for that purpose, until, according to the regular course of procedure, the arguments for the State and the prisoner had been concluded. Taking this to be true, the Court might very well have refused to allow the defendant to make the statement he desired.

For the error in the first question considered, the judgment is reversed, and the defendant is directed to remain in custody to await a trial *de novo*, unless in the *interim* he be discharged by due course of law.