**Richard Leon WOODS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–90–00331–CR.**

Court of Appeals of Texas,
Tyler.

July 26, 1991.

Kurt Noell, Tyler, for appellant.

---

1. Appellant's brief incorrectly states that appellant received a sentence of ten years' confinement probated over a period of ten years, and incorrectly states that this is part of an appeal from a revocation hearing.

2. TEXAS PENAL CODE SECTION 30.01(1) defines "habitation" as, "a structure or vehicle that is adapt-

Michael Sandlin, Dist. Atty's. Office, Tyler, for appellee.

RAMEY, Chief Justice.

On November 1, 1990, a jury convicted appellant of the offense of burglary of a habitation and assessed his punishment at eight years confinement. The court suspended imposition of the sentence and placed the appellant on probation for five years.[1] Appellant raises two points of error. We will affirm the conviction.

■  Appellant's first point of error alleges that the trial court erred in failing to grant appellant's motion for directed verdict because the evidence was insufficient to establish that appellant *entered* the habitation. While appellant concedes that the evidence shows that the screens on several windows and possibly one screen door were cut, he states that these acts did not constitute entering the habitation.

In reviewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 at 320, 99 S.Ct. 2781 at 2789, 61 L.Ed.2d 560 (1979); *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Cr.App.1984). TEX. PENAL CODE ANN. § 30.02 (Vernon 1989) sets forth the elements of burglary; the relevant portions of this section provide that:

(a) A person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation[2], or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft:

. . . .

(b) For purposes of this section, "enter" means to intrude:

ed for the overnight accommodation of persons, and includes: (A) each separately secured or occupied portion of the structure or vehicle; and (B) each structure appurtenant to or connected with the structure or vehicle."

(1) any part of the body; or

(2) any physical object connected with the body.

The evidence shows that on or about the night of August 5, 1989, Belinda Ann Lasley was awakened from sleep by the sound of scraping at her window. Upon wakening, she continued to hear the scraping sound accompanied by a "grunt noise" consistent with the sounds made by a person who was straining or trying to perform a physical task such as attempting to open a window. Upon confirming that the scraping sound was made by a person rather than an animal, Ms. Lasley called "911" and reported that she was home alone and that someone was outside her window cutting her screen. The police arrived approximately five to ten minutes later. Ms. Lasley testified that appellant had cut screens on a total of four windows, and that she had heard his feet on the back steps and had heard him cut the screen on the back door as well. When the police officers arrived, Ms. Lasley heard appellant attempt to flee the scene. Ms. Lasley further testified that she had not given appellant consent to enter her residence, that the screens were not cut when she came home that night, and that since all of the window screens were bolted to the wood window frames and both the front and back screen doors were hooked, the only means of entrance would have been through the screens.

Officer Tom Hrobar of the Tyler Police Department testified that he and Officer Clay Allen responded to Ms. Lasley's 911 call. Officer Hrobar also testified to the following with regard to his investigation:

Q. (By the State's attorney) Now, you have testified just then that y'all arrived with reference to a possible burglary, that you went around to the right or would that be the East side of that residence?

A. (By Officer Hrobar) That is the East side, yes, sir.

Q. All right, and when you went around the East side of that house, what did or if anything did you—did—were you able to locate?

A. As I started around the corner of the house I observed a man standing at the last window on that corner on that side toward me on the South side of the house.

Q. All right.

A. Southeast of that side.

.    .    .    .    .

Q. Now, what did you see this man doing?

A. He had his hand up like this bringing it back down from the screen.

Q. Okay, and how could you see this at that particular time?

A. Well, he was against a white house and we had street lights and at that time I turned on my flashlight once I observed him and put him in the beam of my flashlight.

Q. All right, sir. What did you see next? Did he have anything in his hand? Did you see anything at this point?

A. Yes, sir. He had a knife in his hand?

Q. All right, sir. And again the way that you saw that was by virtue of your flashlight and the lighting situation?

A. Yes, sir.

Q. Okay. Could you tell us at that point what kind of knife it was? Was it large or small or what?

A. It appeared to be fairly small. It was not a long blade but it was still a knife and at that time I placed—which I had my weapon out and I placed it on him and told him to drop it.

.    .    .    .

Q. All right sir. Did you ascertain that individual's identity on that particular night?

A. Yes, sir, I did.

Q. All right, sir, and what was that individual's name?

A. Richard Woods.

Following Officer Hrobar's testimony, Officer Allen testified with regard to the apprehension of appellant. Although Officer Hrobar was the first officer to come into contact with appellant, Officer Allen

arrived shortly thereafter, and his testimony was essentially the same as that of Officer Hrobar. Following the State's case, appellant moved for a directed verdict on the basis of the State's failure to prove "entry" into the habitation. Appellant's motion was overruled by the court, and the appellant rested without putting on any evidence.

In *Ortega v. State*, 626 S.W.2d 746, 747 (Tex.Cr.App.1981), the appellant was seen prying with a screwdriver on the wooden door of a house, and an investigation revealed that the latch on the screen door had been pulled off, the door knob on the wooden door had been disabled, and there were pry marks on the wooden door. The evidence also showed that none of these conditions had existed when the owner had left for work that day. Based upon these facts, the court found that an entry into the part of the house between the screen door and the wooden door was sufficient to constitute "entry" under section 30.02.

Given the holding in *Ortega* and the definition of "entry" provided in section 30.-02(b)(2), we find the evidence sufficient beyond a reasonable doubt to support a jury's finding that appellant entered the habitation. Appellant's first point of error is overruled.

 Appellant's second point of error alleges that the trial court erred in failing to grant appellant's motion for directed verdict based upon the State's failure to prove appellant's intent to commit theft, and that insufficient evidence exists to prove such intent.[3] The intent of an accused is a fact question which the jury may resolve from the surrounding circumstances. *Ortega*, 626 S.W.2d 749; *Moreno v. State*, 702 S.W.2d 636, 641 (Tex.Cr.App. 1986); *McDonald v. State*, 750 S.W.2d 285, 286 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). In the instant case, appellant entered Ms. Lasley's habitation at night without her consent. A non-consensual entry of a habitation at night, creates a rebut-

table presumption that the actor intended to commit theft. *Moss v. State*, 574 S.W.2d 542, 544 (Tex.Cr.App.1978). This rebuttable presumption may be considered by an appellate court in determining the sufficiency of the evidence to support a finding of intent. *Browning v. State*, 720 S.W.2d 504, 506 (Tex.Cr.App.1986); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Cr.App. 1985). In addition to the fact that appellant's entry occurred at night, the evidence indicated that Ms. Lasley heard a "grunt noise" consistent with a person straining to open a window. Appellant introduced no evidence to rebut the presumption of intent to commit theft. We find that the evidence was sufficient beyond a reasonable doubt to prove that appellant entered the habitation with intent to commit theft. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.

---

**3.** Upon examination of the Statement of Facts, we note that although the trial court questioned the issue of "intent," appellant's motion for directed verdict pertained only to the issue of "entry." However, we will treat the point of error as a challenge to the sufficiency of the evidence to prove the element of intent to commit theft.