[No. S095385. June 3, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
CUAHUTEMOC SANCHEZ VALENCIA, Defendant and Appellant.

**COUNSEL**

Chris Truax, under appointment by the Supreme Court, for Defendant and Appellant.

John T. Philipsborn and Cliff Gardner for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Megan J. Beale, Racquel M. Gonzalez, Crystal L. Bradley, Peter Quon, Jr., and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GEORGE, C. J.**—Under California law, the crime of burglary is committed when a person "*enters* any . . . *building*," including a "house," "with intent to commit . . . larceny or any felony." (Pen. Code,[1] § 459, italics added; see § 460.)

We granted review to determine whether penetration into the area behind a window screen amounts to an entry of a building within the meaning of the

---

[1]Unless otherwise specified, all section references are to the Penal Code.

burglary statute when the window itself is closed and is not penetrated. As we shall explain, we conclude that it does. Accordingly, we reverse the judgment of the Court of Appeal, which held to the contrary.

I

The evidence presented at defendant's trial for the crime of burglary, viewed in the light most favorable to the judgment, reveals the following facts pertinent to the issue before us:

On the morning of February 4, 1998, Lee Florea left the house he shared with his wife and children in Santa Ana to go to work, with the doors and windows locked and the window screens secured in their tracks in front of the windows.

About noon, Nicky Nava, who lived across the street from the Floreas, came home for lunch. Looking out through a screen door, Nava saw a person later identified as defendant. As she watched, defendant, who apparently had a screwdriver in his hand, removed a window screen from a bathroom window of the Floreas' house and tried unsuccessfully to open the window itself. Evidently, defendant earlier had pulled a window screen away from a bedroom window of the Floreas' house and had tried unsuccessfully to open that window as well.

Nava called the Santa Ana Police Department and described defendant and his activities. As she continued to watch, moving at some point up to her screen door and then outside, defendant walked from the bathroom window of the Floreas' house and tried unsuccessfully to open the front door. Apparently in anger or frustration, defendant banged on the wall and then sat down for a few minutes. Defendant then got into an automobile, which resembled a gray or brown Monte Carlo or LTD, drove down the street about four houses away, parked, and got out.

By this time, Santa Ana Police Officer John Douthit had arrived at the scene. Douthit approached defendant, who was standing in the driveway of the house in front of which he had parked. Douthit asked defendant whether he owned the automobile parked in front of the house, and defendant answered he did not; Douthit asked defendant what he was doing, and defendant answered he was looking for a friend he called "Tommy." Douthit then searched defendant's pants pocket and found a pair of black gloves and a screwdriver with a bent blade and shank. Through a police dispatcher, Douthit confirmed that defendant matched the description reported by Nava. Douthit then arrested defendant. Defendant protested that he had not done

anything wrong, and that he merely had been looking for a friend, whom he now called "Tony," to help in locating a stolen bicycle.

Going to the Floreas' house, Officer Douthit found what appeared to be rub marks on the bathroom window that could have been made by defendant's hand or hands as he tried to open the window. Douthit also found several pry marks on the frame of the bedroom window that could have been made by defendant's screwdriver. Florea returned to his house about this time, finding the scene as described above. Douthit later determined that defendant did indeed own the automobile he had denied owning.

After the presentation of evidence, the trial court instructed the jury on the offense of burglary. At the People's request, and over defendant's objection, the court gave the following instruction, drawn directly from *People v. Nible* (1988) 200 Cal.App.3d 838 [247 Cal.Rptr. 396] (*Nible*) and indirectly from *People v. Ravenscroft* (1988) 198 Cal.App.3d 639 [243 Cal.Rptr. 827] (*Ravenscroft*): "Any kind of entry, partial or complete, will satisfy the element of entry. The entry may be made by any part of the body or by use of an instrument or tool. *In order for there to have been an entry, a part of the defendant's body or some instrument, tool or other object under his control must have penetrated the area inside where the screen was normally affixed in the window frame in question.*" (Italics added.) The court refused to give the following instruction, based upon language from *Nible*, which defendant requested and the People objected to: "The test of whether an entry has occurred is whether a reasonable person would believe a window screen provides some protection against unauthorized intrusions."

The jury returned a verdict finding defendant guilty of burglary and determining that the burglary was of the first degree because it involved an inhabited dwelling house (§ 460, subd. (a)). The trial court rendered a judgment of conviction on the jury's verdict, imposing a sentence of four years in prison.[2]

On appeal, the Court of Appeal held that penetration into the area behind a window screen does not amount to an entry of a building within the meaning of the burglary statute, at least when, as in this case, the window itself is closed and is not penetrated. The Court of Appeal therefore concluded that the trial court erred by instructing the jury as requested by the

[2]In addition to being found guilty by the jury of first degree burglary, defendant pleaded guilty to possession of heroin (Health & Saf. Code, § 11350, subd. (a)) and admitted an allegation that he committed the crimes in question while released from custody on bail or on his own recognizance (Pen. Code, § 12022.1). Together with the sentence of four years in prison for first degree burglary, the trial court imposed a sentence of two-thirds of a year for possession of heroin plus a two-year enhancement for committing the crimes while released from custody, for a total determinate sentence of six and two-thirds years.

People. The Court of Appeal also concluded that the trial court did not err by refusing to instruct as requested by defendant. The Court of Appeal went on to determine that, "[a]s a matter of law," defendant "was guilty only of attempted [first degree] burglary." As a consequence, the Court of Appeal reversed defendant's conviction and sentence for first degree burglary and remanded the cause to the trial court with directions to enter a conviction for attempted first degree burglary and to impose sentence accordingly.

We granted the People's petition for review in order to consider the validity of the Court of Appeal's holding. As stated above, we reach a conclusion contrary to that reached by the Court of Appeal and therefore reverse the judgment rendered by that court.

## II

The crime of burglary is committed when a person *"enters* any . . . *building,"* including a "house," "with intent to commit . . . larceny or any felony." (§ 459, italics added.)[3] Burglary may be of the first or second degree,[4] but in either event involves an entry into a building or other specified structure.

The issue before us is whether penetration into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute when the window itself is closed and is not penetrated. As we shall explain, we conclude that it does.

In *People v. Davis* (1998) 18 Cal.4th 712 [76 Cal.Rptr.2d 770, 958 P.2d 1083] (*Davis*), we recently had occasion to discuss the offense of burglary,

---

[3]Section 459 provides: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code, when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary. As used [herein], 'inhabited' means currently being used for dwelling purposes, whether occupied or not. A house, trailer, vessel designed for habitation, or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises."

[4]Section 460 provides in pertinent part: "(a) Every burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, or trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first degree. [¶] (b) All other kinds of burglary are of the second degree."

including consideration of its historical background and its general contours today. Our discussion provides a useful starting point for addressing the rather narrow question presented in this case.

In *Davis*, we explained that "[t]he interest sought to be protected by the common law crime of burglary was clear. At common law, burglary was the breaking and entering of a dwelling in the nighttime. The law was intended to protect the sanctity of a person's home during the night hours when the resident was most vulnerable. As one commentator observed: 'The predominant factor underlying common law burglary was the desire to protect the security of the home, and the person within his home. Burglary was not an offense against property, real or personal, but an offense against the habitation, for it could only be committed against the dwelling of another. . . . The dwelling was sacred, but a duty was imposed on the owner to protect himself as well as looking to the law for protection. The intruder had to break and enter; if the owner left the door open, his carelessness would allow the intruder to go unpunished. The offense had to occur at night; in the daytime home-owners were not asleep, and could detect the intruder and protect their homes.'" (*Davis, supra,* 18 Cal.4th at p. 720.)

We went on to explain in *Davis* that, "[i]n California, as in other states, the scope of the burglary law has been greatly expanded. There is no requirement of a breaking; an entry alone is sufficient. The crime is not limited to dwellings, but includes entry into a wide variety of structures. The crime need not be committed at night." (*Davis, supra,* 18 Cal.4th at pp. 720-721.)

Nonetheless, as we added in *Davis*, the great expansion in the scope of the burglary law has not been unlimited. "In *People* v. *Gauze* (1975) 15 Cal.3d 709 [125 Cal.Rptr. 773, 542 P.2d 1365], we . . . observed that '[a] burglary remains an entry which invades a possessory interest in a building.' [Citation.] . . . ' "Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety." [The burglary statute], in short, is aimed at the danger caused by the unauthorized entry itself.'" (*Davis, supra,* 18 Cal.4th at p. 721.)

In *Davis*, we further proceeded to note and approve the rule reflected in *People v. Moore* (1994) 31 Cal.App.4th 489 [37 Cal.Rptr.2d 104], *People v.*

*Walters* (1967) 249 Cal.App.2d 547 [57 Cal.Rptr. 484], and *People v. Osegueda* (1984) 163 Cal.App.3d Supp. 25 [210 Cal.Rptr. 182], that entry may be effected by the intruder or by an instrument employed by the intruder, whether used "solely to effect entry, or to accomplish the intended larceny or felony as well." (*Davis, supra,* 18 Cal.4th at p. 717.)

Accordingly, resolution of the question before us does not depend upon whether penetration into the area behind a window screen is effected by the intruder or by an instrument employed by the intruder. Rather, it turns solely upon whether any such penetration amounts to an entry of a building.

In approaching this question, the People and defendant place considerable reliance, as did the Court of Appeal, on two Court of Appeal decisions— *Ravenscroft* and *Nible*—that preceded our decision in *Davis*.

In *Ravenscroft*, the Court of Appeal held that a defendant's insertion of an automatic teller machine (ATM) card into an ATM that was mounted inside a bank and was secured flush with the bank's exterior wall amounted to an entry of a building within the meaning of the burglary statute, because the ATM was part of the bank's outer boundary for purposes of burglary. In so holding, the Court of Appeal rejected a claim by the defendant that "his insertion of an ATM card into" an ATM did "not constitute an entry" of the bank "since he did not violate [its] air space." (*Ravenscroft, supra,* 198 Cal.App.3d at p. 643.) The Court of Appeal stated: "The insertion of an ATM card . . . is no less an entry into the air space of a bank as would be the use of any other tool or instrument. Although the California Penal Code does not define 'entry' for the purpose of burglary, the California courts have found that a burglary is complete upon the slightest partial entry of any kind, with the requisite intent . . . ." (*Ibid.*) In support, the Court of Appeal relied upon *People v. Walters, supra,* 249 Cal.App.2d at page 550, where the intruders simply pried off and removed the lid of a rooftop vent and lowered a rope into a building. The Court of Appeal also relied upon *People v. Osegueda, supra,* 163 Cal.App.3d at pages Supp. 31-32, where the intruders merely sawed a six-inch by four- to five-inch hole through the wall of a building.

In *Nible*—which is the California case whose facts are closest to ours, and which we accordingly discuss at some length—the Court of Appeal held that a defendant's penetration into the area behind a window screen amounted to an entry of a building within the meaning of the burglary statute, because the window screen was part of the building's outer boundary for purposes of burglary.

In support of its holding, the Court of Appeal in *Nible* explained: "No California authority has considered whether the penetration of a window

screen, without penetration of . . . the window beyond, constitutes an entry within the meaning of [the burglary statute]. Defendant contends the correct analysis to determine whether a burglarious entry has occurred is whether the 'air space' of a protected structure has been penetrated by a part of the defendant's body or an instrument or tool wielded by him. (See *People* v. *Ravenscroft* (1988) 198 Cal.App.3d 639, 643-644 . . . .) The 'air space' analysis of *Ravenscroft* . . . does not necessarily lead to the result defendant suggests. Rather, it is reasonable to conclude that a window screen contains the outer boundary of a building's air space, especially when, as here, the window itself was left open. However it might be applied here, in our view the 'air space' test, although useful in some situations, is inadequate as a comprehensive test for determining when a burglarious entry occurs." (*Nible, supra,* 200 Cal.App.3d at pp. 843-844, fn. omitted.)

The Court of Appeal in *Nible* went on to state that "a more comprehensive test is suggested by the California Supreme Court's analysis" (*Nible, supra,* 200 Cal.App.3d at p. 844) in *People v. Gauze, supra,* 15 Cal.3d 709, which we have quoted above.

Moving beyond our discussion in *Gauze,* the Court of Appeal in *Nible* reasoned: "As the burglary statute is designed to protect against unauthorized entry and its attendant dangers, the ultimate test of whether a burglarious entry has occurred must focus on the protection the owners or inhabitants of a structure reasonably expect. The proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions. A structure with a locked door or window clearly affords a reasonable expectation of protection from invasion. But even an open door or window affords some expectation of protection from unauthorized intrusion because reasonable persons understand the social convention that portals may not be crossed without permission from the structure's owner." (*Nible, supra,* 200 Cal.App.3d at p. 844.)

"Thus," stated the Court of Appeal in *Nible,* "the focus of the question whether the penetration of a window screen constitutes a burglarious entry must be on whether a reasonable person would believe a window screen provides some protection against unauthorized intrusions. The answer is unequivocally in the affirmative. 'The opening of a screen door or window is deemed a burglarious breaking, . . . In such cases the screen door [or window] is not to be considered as a mere protection against flies, but rather as a permanent part of the dwelling. The holdings proceed, it would seem, on the grounds that the screen door [or window] is a part of the house on which the occupants rely for protection and that to open such a door [or window] is a violation of the security of the dwelling house which is the peculiar

gravamen of a burglarious breaking.' . . ." (*Nible, supra,* 200 Cal.App.3d at p. 845.)

The Court of Appeal in *Nible* concluded: "The purposes of the burglary laws are best served by our holding the penetration of a window screen constitutes entry within the meaning of [the burglary statute]. As noted above, the burglary law protects against the dangers caused by unauthorized entry. The inhabitants of a building are just as likely to react violently to an intruder's penetration of their window screen as to the penetration of the window itself." (*Nible, supra,* 200 Cal.App.3d at p. 845.)

In *Davis,* subsequent to the Court of Appeal decisions in *Ravenscroft* and *Nible,* we faced the question whether a defendant's placing of a forged check into a chute in a walk-up window at a check-cashing facility amounted to an entry of a building within the meaning of the burglary statute. We held that it did not. In so holding, we accepted that the chute was part of the building's outer boundary for purposes of burglary. We reasoned, however, that although the placing of the forged check into the chute effected a type of entry, it was not "the type of entry *the burglary statute was intended to prevent.*" (*Davis, supra,* 18 Cal.4th at p. 720, italics added.) In support, we stated that the act did not "violate[] the occupant's possessory interest in the building" (*id.* at p. 722) or threaten " ' "the germination of a situation dangerous to personal safety" ' " (*id.* at p. 721).

In the course of our discussion in *Davis,* we "disapprove[d]" *Ravenscroft* to the extent it held that a defendant's insertion of an ATM card into an ATM in a bank amounted to an entry of a building within the meaning of the burglary statute. (*Davis, supra,* 18 Cal.4th at p. 722, fn. 5.) At the same time, however, we added that we did "not disapprove the other aspects of . . . *Ravenscroft,* including its conclusion that the ATM card in that case was inserted into the air space of the ATM," and on this point we inserted a citation to *Nible.* (*Davis, supra,* 18 Cal.4th at p. 722, fn. 5.)

As we have seen, the Court of Appeal in *Nible* found in *Ravenscroft* what it called a sometimes "useful," but sometimes "inadequate," " 'air space' test." (*Nible, supra,* 200 Cal.App.3d at p. 844.) The Court of Appeal in *Nible* proposed as "more comprehensive" a "reasonable belief" or "reasonable expectation" test. (*Id.* at p. 844; see *id.* at pp. 844-845 & fn. 4.)

Like the Court of Appeal in *Nible,* we have misgivings about the general usefulness of an airspace test to define the outer boundary of a building for purposes of burglary. An airspace test, to be sure, may be helpful when the question is whether there is the "slightest partial entry" of a building

(*Ravenscroft, supra,* 198 Cal.App.3d at p. 643), as when an intruder simply lowers a rope into a building through a rooftop vent (see *People v. Walters, supra,* 249 Cal.App.2d at p. 550) or saws a hole through the wall of a building (see *People v. Osegueda, supra,* 163 Cal.App.3d at pp. Supp. 31-32). But an airspace test does not help define the outer boundary of a building when that boundary is not otherwise established. The airspace of a building is not independent of the outer boundary of a building; rather, the airspace of a building simply is that which is surrounded by the building's outer boundary. (See *People v. Elsey* (2000) 81 Cal.App.4th 948, 963, fn. 7 [97 Cal.Rptr.2d 269].)

In most instances, of course, the outer boundary of a building for purposes of burglary is self-evident. Thus, in general, the roof, walls, doors, and windows constitute parts of a building's outer boundary, the penetration of which is sufficient for entry.

In other instances, in which the outer boundary of a building for purposes of burglary is *not* self-evident, we believe that a reasonable belief test generally may be useful in defining the building's outer boundary. Under such a test, in dealing with items such as a window screen, a building's outer boundary includes any element that encloses an area into which a reasonable person would believe that a member of the general public could not pass without authorization. Thus, whereas decisions treat an "ordinary, unenclosed front porch" of a house (*People v. Brown* (1992) 6 Cal.App.4th 1489, 1497 [8 Cal.Rptr.2d 513] [construing § 198.5, the "Home Protection Bill of Rights," which is similar to § 459]) as not part of the building's outer boundary, because a reasonable person usually would believe that a member of the general public did not need authorization to pass onto such a porch, they treat a screen door to an enclosed porch of a house (see *Bowers v. State* (1982) 164 Ga.App. 462, 462-463 [297 S.E.2d 359, 360]; *State v. Jenkins* (Mo.Ct.App. 1987) 741 S.W.2d 767, 769) and a locked gate covered with iron mesh in front of an enclosed and roofed front stairway of a house (see *People v. Wise* (1994) 25 Cal.App.4th 339, 344-348 [30 Cal.Rptr.2d 413]) as part of the building's outer boundary, because a reasonable person usually would believe that a member of the general public needed authorization to walk through such a screen door or gate. The test reflects and furthers the occupant's possessory interest in the building and his or her personal interest in freedom from violence that might ensue from unauthorized intrusion.[5]

We note that, at one point in its discussion, the Court of Appeal in *Nible* employed language that might be understood to cast the reasonable belief

---

[5]In defining the outer boundary of a building for purposes of burglary, the reasonable belief test focuses on whether a reasonable person would believe that a member of the general public *needed* authorization to pass beyond a given element of the building, not on whether any particular individual *possessed* authorization. It is important to keep in mind that the test

test in terms of "whether a reasonable person would believe" that any given element of a building "provides some [physical] protection against unauthorized intrusions." (*Nible, supra,* 200 Cal.App.3d at p. 845.) The latter quoted language might be appropriate if the offense of burglary continued to require unlawful breaking as well as entering. In that event, an element of a building would have to be something that could protect against breach. But, as we have stated most recently in *Davis,* burglary now entails only unlawful entry. (*Davis, supra,* 18 Cal.4th at p. 722.) In light of that circumstance, we believe that the test properly is phrased in terms of whether a reasonable person would believe that the element of the building in question enclosed an area into which a member of the general public could not pass without authorization. Indeed, as so phrased the test is not inconsistent with what the Court of Appeal in *Nible* seems to have had in mind. As we have noted, that court stated that "even an open door or window affords some expectation of protection from unauthorized intrusion because reasonable persons understand the social convention that portals may not be crossed without permission" (*Nible, supra,* 200 Cal.App.3d at p. 844)—implying that what matters is not whether a reasonable person would believe that a given element of a building provides some physical protection against unauthorized intrusion, but simply whether a reasonable person would believe that a member of the general public needed authorization to pass beyond it.

Under the reasonable belief test as set forth above, we are of the view that a window screen is clearly part of the outer boundary of a building for purposes of burglary. A reasonable person certainly would believe that a window screen enclosed an area into which a member of the general public could not pass without authorization. As the Court of Appeal in *Nible* implied, window screens, which announce that intrusion is unauthorized, do not limit their message to flies but extend it to burglars as well.

We recognize that penetration into the area behind a window screen without penetration of the window itself usually will effect only a minimal

is concerned with defining the outer boundary of a building, not with determining whether a particular individual lawfully may pass beyond that boundary. Thus, although the test is generally useful in defining the outer boundary of a building, it is not intended to resolve all other material issues, including the lawfulness of entry (cf., e.g., *People v. Barry* (1892) 94 Cal. 481, 483 [29 P. 1026] [holding that a person who enters a business during business hours when the public is invited nevertheless enters unlawfully if he "enters with the intention to commit a felony": such a person "enters without an invitation," since "[h]e is not one of the public invited, nor is he entitled to enter"]).

Furthermore, in defining the outer boundary of a building for purposes of burglary, the reasonable belief test necessarily refers only to an element of a building that reasonably can be viewed as part of *the building's* outer boundary. The test does not encompass any feature that is not such an element, such as a lawn, courtyard, unenclosed patio, or unenclosed balcony that may be located in front of or behind a building; nor does the test purport to define any such feature as part of a building's outer boundary.

entry of a building in terms of distance. ▮ But it has long been settled that "[a]ny kind of entry, complete or partial, . . . will" suffice. (2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 120, p. 151.) All that is needed is entry "inside the premises" (*People v. Failla* (1966) 64 Cal.2d 560, 569 [51 Cal.Rptr. 103, 414 P.2d 39]), not entry inside *some inner part of* the premises. ▮ Furthermore, there is little doubt that even the minimal entry effected by penetration into the area behind a window screen—without penetration of the window itself—is "the type of entry the burglary statute was intended to prevent." (*Davis*, *supra*, 18 Cal.4th at p. 720.) Such an entry "violates the occupant's possessory interest in the building . . . ." (*Id.* at p. 722.) It also threatens " ' "the germination of a situation dangerous to personal safety." ' " (*Id.* at p. 721.) As the Court of Appeal in *Nible* observed, "[t]he inhabitants of a building are just as likely to react violently to an intruder's penetration of their window screen as to the penetration of the window itself." (*Nible*, *supra*, 200 Cal.App.3d at p. 845.) In *Davis*, we held that the placing of a forged check into a chute in a walk-up window at a check-cashing facility was not "the type of entry the burglary statute was intended to prevent," because it did not violate any occupant's possessory interest in a building or his or her personal interest in freedom from violence that might ensue from unauthorized intrusion. (*Davis*, *supra*, 18 Cal.4th at p. 720.) By contrast, penetration into the area behind a window screen—even without penetration of the window itself—is just such an entry, because it violates both of these interests.

In view of the foregoing, we conclude that penetration into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute even when the window itself is closed and is not penetrated.[6]

In holding to the contrary, the Court of Appeal purported to rely on *Davis*. Its reliance, however, was misplaced. In *Davis*, we did not rest our decision

---

[6]California decisions in addition to *Nible* are consistent with our conclusion. (See *People v. Moore*, *supra*, 31 Cal.App.4th at pp. 492-493 [holding that penetration of a screen door of a house, even without penetration of an inner door, amounted to an entry of a building within the meaning of the burglary statute]; *People v. Wise*, *supra*, 25 Cal.App.4th at pp. 344-348 [holding to the same effect as to penetration of iron mesh on a gate to a house].)

Consistent as well are decisions in other jurisdictions. (See *Bowers v. State*, *supra*, 164 Ga.App. at pp. 462-463 [297 S.E.2d at p. 360] [finding sufficient evidence of an entry of a building where a defendant removed a screen door to an enclosed porch of a house, passed into the porch, but not into the house's interior]; *State v. Crease* (1982) 230 Kan. 541, 542 [638 P.2d 939, 940] [to the same effect where a defendant and an accomplice "removed a storm window from [a] house and were beginning to remove the inside window," even though "they did not actually raise or disturb the inside window"]; *State v. Gatewood* (1950) 169 Kan. 679, 683 [221 P.2d 392, 396] ["Suppose an owner of a dwelling, while leaving the premises in a hurry, left some articles between" an outer screen door and an inner wooden door, "as is frequently done, and had locked the screen door, would we say there had been no breaking or entering if the screen door were unlocked and the articles stolen? We do not think so."]; *State v. Jenkins*, *supra*, 741 S.W.2d at p. 769 [finding sufficient evidence of an entry of a building where a defendant cut open a screen door to an enclosed porch of a house and proceeded onto

on whether the chute in the check-cashing facility's walk-up window was part of the building's outer boundary for purposes of burglary, but rather on whether the placing of the forged check into the chute effected the type of entry that the burglary statute was intended to prevent. In particular, we did not purport to adopt an airspace test as the standard for defining a building's outer boundary. When we referred to a building's airspace, we did so simply to denote what was inside what we accepted as the building's outer boundary. (See *Davis, supra*, 18 Cal.4th at pp. 719, 722, fn. 5.)

Further, the Court of Appeal reasoned that penetration into the area behind a window screen without penetration of the window itself does not amount to an entry of a building within the meaning of the burglary statute, because such penetration does not reach inside some inner part of the premises or because the area penetrated is too "minuscule." But, as we have stated, all that is needed is entry "inside the premises." (*People v. Failla, supra*, 64 Cal.2d at p. 569.) Because we have concluded that a window screen is part of the outer boundary of a building for purposes of burglary, it follows that

the porch, but not into the house's interior]; *People v. Mazer* (1994) 208 A.D.2d 956, 956 [617 N.Y.S.2d 892] [to the same effect where a defendant cut and removed a window screen of a house, passed through its plane, but did not proceed into the house's interior]; *Ortega v. State* (Tex.Crim.App. 1981) 626 S.W.2d 746, 747 [to the same effect where a defendant pulled a latch off a screen door mounted in front of a wooden door of a house and then passed "into that part of the house between the screen door and the wooden door"]; *Woods v. State* (Tex.App. 1991) 814 S.W.2d 213, 214-216 [to the same effect where a defendant cut several window screens and possibly one screen door of a house, passed through their plane, but did not proceed into the house's interior]; cf. *State of Iowa v. Conners* (1895) 95 Iowa 485, 486 [64 N.W. 295, 295] [holding that a defendant effected a breaking of a building where he opened a screen door of a house that "was hung on spring hinges, which served to keep it closed," but "was not fastened with a latch"]; *Collins v. Commonwealth* (1912) 146 Ky. 698, 701 [143 S.W. 35, 36] [holding that a defendant effected a breaking of a building where he opened a screen door of a house "which, although unfastened, was so tightly and securely closed and fitted to the frame of the door, that the use of some strength and pulling force was required to open it"]; *State v. Henderson and Younger* (1908) 212 Mo. 208, 213 [110 S.W. 1078, 1079] [approving a jury instruction stating that the jury could find a breaking of a building " 'if they find . . . that [a house's] screen door . . . was kept closed by means of hinges and springs attached to the same in such manner that some force was necessary to open said door and that the defendants opened said door by using such force' "]; *State v. Simpson* (R.I. 1992) 611 A.2d 1390, 1391-1394 [finding sufficient evidence of a breaking into a building where a defendant opened or removed a window screen of a house]; but see *State v. McCall* (1843) 4 Ala. 643, 646 [finding, in the face of contrary authority, insufficient evidence of an entry of a building where a defendant broke open the shutters of a window but did not pass beyond the window itself]; *Minter v. State* (1903) 71 Ark. 178, 178-179 [71 S.W. 944, 945] [following *McCall*, where a defendant removed some slats on the outside of a window, and some tacks and putty from the window sash, but did not remove the window glass]; *State v. Pigques* (Mo. 1958) 310 S.W.2d 942, 944-947 [following *McCall*, where a defendant entered certain outer wooden doors of a building but not an inner wire-mesh door]; *State v. Carter* (Mo.Ct.App. 1976) 541 S.W.2d 692, 694-695 [following *Pigques*, where a defendant cut and opened a screen door, pushed in and pried back an iron mesh grate in front of a window in a door, and broke out the window glass].)

the area behind the window screen is inside the premises. Entry that is *just barely* inside the premises, even if the area penetrated is small, is sufficient.

Defendant presents several arguments in support of his position, but we find none persuasive. In addition to relying on an airspace test and the Court of Appeal's reasoning, which we already have discussed and rejected, defendant claims that the reasonable belief test is unacceptably vague and indeterminate. He urges that instead we should adopt some sort of bright-line rule. In our view, however, the reasonable belief test is well suited to define the outer boundary of a building for purposes of burglary and, in application, operates as a kind of bright-line rule with respect to any given element of a building. Contrary to defendant's implication, the test does not leave it to the trier of fact in an individual case to find whether or not a window screen is part of the outer boundary of a building. Instead, applying the reasonable belief test, we ourselves have concluded that a window screen is part of a building's outer boundary and, hence, that penetration into the area behind a window screen amounts to an entry of a building even when the window itself is closed and is not penetrated.[7]

---

[7]The dissenting opinion asserts that "an intruder who removes a screen that is outside a closed window of a building, but who does not succeed in opening the window, has not 'entered' the building." (Dis. opn., *post*, at p. 19.) The dissent argues that under the "usual and ordinary meaning" of the term "enter," an intruder "enters" a building only "by going *inside*" the building, and "a screen outside a closed window is not *inside* the building." (*Id.* at pp. 18-19, italics in original.)

In our view, the dissent's analysis is flawed in at least two fundamental respects. First, it is well established that the word "enter" as used in the burglary statute in California is something of a term of art. It long has been clear, for example, that an intruder "enters" a building for purposes of burglary when he or she inserts an instrument through the edge of a window or door even when the intruder does not succeed in opening the window or door, and thus does not, in common parlance, "go inside" the building. (See, e.g., *People v. Osegueda, supra*, 163 Cal.App.3d at pp. Supp. 30-32.) This meaning of the word "enter" is consistent with the underlying purpose of the burglary statute, which, as the dissent recognizes, is in part " ' "to forestall the germination of a situation dangerous to personal safety." ' " (Dis. opn., *post*, at p. 18, quoting *People v. Gauze, supra*, 15 Cal.3d at p. 715.)

Second, in focusing solely on the word "enter," the dissent misses the point that the key question before us in this case is how to define the outer boundary of a building for purposes of burglary. On this crucial issue, the dissent simply asserts that a window screen is outside the building, thus implying that the screen is not part of the building's outer boundary. The dissent, however, provides no reason or authority for this assertion, which is inconsistent with a substantial majority of the California and out-of-state decisions cited above.

Amicus curiae supporting defendant's position argues that the reasonable belief test amounts to an improper judicial redefinition of "entry" as one of the elements of burglary. The argument is based on the proposition that, in view of its common law antecedents, the burglary statute implicitly defines a window screen as *not* part of a building's outer boundary. We find no such implicit definition in the burglary statute—which, as we have explained, represents a considerable departure from common law burglary. Moreover, and contrary to amicus curiae's position, we see no conflict between our conclusion today, that penetration

## III

We now review the Court of Appeal's decision in light of our conclusion.

As noted, the Court of Appeal held that penetration into the area behind a window screen does not amount to an entry of a building within the meaning of the burglary statute, at least when the window itself is closed and is not penetrated. The Court of Appeal therefore concluded that the trial court had erred by instructing the jury, at the People's request, that "[i]n order for there to have been an entry, a part of the defendant's body or some instrument, tool or other object under his control must have penetrated the area inside where the screen was normally affixed in the window frame in question." The Court of Appeal also concluded that the trial court had not erred by refusing to instruct the jury, at defendant's request, that "[t]he test of whether an entry has occurred is whether a reasonable person would believe a window screen provides some protection against unauthorized intrusions."

In view of our conclusion that penetration into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute even when the window itself is closed and is not penetrated, we reject the Court of Appeal's contrary holding. We also disagree with the Court of Appeal's determination that the instruction requested by the People was erroneous. That instruction was consistent with the conclusion we reach. There is no reasonable likelihood that the jury misunderstood or misapplied the instruction. (See *People v. Clair* (1992) 2 Cal.4th 629, 663 [7 Cal.Rptr.2d 564, 828 P.2d 705].)

In contrast, we agree with the Court of Appeal that the instruction requested by defendant was erroneous. Whether penetration into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute is a question of law and not a question of fact. A trial court's instructions must resolve such a legal issue for the jury, and may not invite the jury to resolve the question for itself.

Finally, based on its holding that penetration into the area behind a window screen does not amount to an entry of a building within the meaning of the burglary statute, at least when the window itself is closed and is not penetrated, the Court of Appeal determined that, "[a]s a matter of law" defendant "was guilty only of attempted [first degree] burglary," and reversed defendant's conviction and sentence for first degree burglary, remanding the cause to the trial court with directions to enter a conviction for

---

into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute even when the window itself is closed and not penetrated, and the holding of an English court almost two centuries ago that an entry of a shutter box that projected from a building did not constitute an entry of the building itself within the meaning of the common law of burglary (*Rex v. Paine* (1834) 173 Eng.Rep. 60, 60).

attempted first degree burglary and to impose sentence accordingly. Because we have determined that even when the window itself is closed and is not penetrated, penetration of a window screen amounts to an entry of a building, we conclude that the Court of Appeal erred in reversing defendant's conviction and sentence on this ground.

## IV

For the reasons stated above, we reverse the judgment of the Court of Appeal.

Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.

**KENNARD, J., Dissenting.**—Under California law, one who "enters" a building with the intent to commit theft or a felony is guilty of burglary. (Pen. Code, § 459.) Here, defendant pried off a window screen on a house, but he was unable to open the window to get inside the house. Did he "enter" the house within the meaning of the burglary statute? According to the majority, he did. I disagree. In my view, the crime defendant committed is *attempted* burglary because he tried, but failed, to enter the house.

## I

Penal Code section 459 defines burglary this way: "Every person who *enters* any home, room, apartment, . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (Italics added.) At issue is whether defendant committed burglary when he successfully removed a window screen but could not open the window to gain entry into the house.

I begin with these basic rules of statutory construction, which the majority conveniently ignores. " 'In construing statutes, we must determine and effectuate legislative intent.' (*Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].) 'To ascertain intent, we look first to the words of the statutes' (*ibid.*), 'giving them their usual and ordinary meaning.' (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].)" (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) Thus, any attempt here to determine whether defendant's conduct satisfied the statutory definition of the crime of burglary should begin with the usual and ordinary meaning of the crucial term "enters."

One widely used dictionary gives this pertinent definition of the word "enter": "To come or go into a place, building, room, etc. . . . ." (5 Oxford

English Dict. (2d ed. 1989) p. 288.) Another states, more simply, "To come or go into." (American Heritage Dict. (4th ed. 2000) p. 595.) Similarly, a respected legal dictionary defines "entry," as used in criminal law, as "[t]he unlawful coming *into* a building to commit a crime." (Black's Law Dict. (7th ed. 1999) p. 554, italics added.)

At common law, the entry requirement for burglary was construed consistently with these dictionary definitions. For example, in *Reg. v. Meal* (1848) 3 Cox C.C. 70, the defendant cut a hole in a window large enough for him to climb through. In ordering him acquitted of burglary, the British court explained that "the mere circumstance that the glass was broken, and the window cut to an extent large enough to admit a man's head and shoulders, was not enough to constitute an actual entry without positive proof that a portion of the body was within the house." (*Id.* at p. 71.)

The idea that one "enters" a building by going *inside* it is consistent with the Legislature's purpose in requiring an entry as an element of the crime of burglary. The Legislature recognized that a prowler or trespasser looking for items to steal *outside* a building does not pose the same risk to the building's occupants as does a person who goes *inside* a building, particularly a home, with the requisite intent. As this court has explained: " 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger and panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.' " (*People v. Gauze* (1975) 15 Cal.3d 709, 715 [125 Cal.Rptr. 773, 542 P.2d 1365]; see also *People v. Wilson* (1969) 1 Cal.3d 431, 440 [82 Cal.Rptr. 494, 462 P.2d 22] ["We have often recognized that persons within dwellings are in greater peril from intruders bent on stealing or engaging in other felonious conduct. . . . Persons within dwellings are more likely to resist and less likely to be able to avoid the consequences of crimes committed inside their homes."]; Model Pen. Code & Commentaries, Introductory Note to art. 221, p. 59 [the crime of burglary "reflects a considered judgment that especially severe sanctions are appropriate for a criminal invasion of premises under circumstances likely to terrorize occupants."].)

To implement this legislative purpose, I would give the term "enter," as used in the burglary statute, the usual and ordinary meaning described earlier. Thus, a person "enters" a building when the person, or an instrument wielded by that person, passes through an area *inside* the building.

Under this definition, an intruder who removes a screen that is outside a closed window of a building, but who does not succeed in opening the window, has not "entered" the building. Why? Because a screen outside a closed window is not *inside* the building. For instance, if a homeowner removes the screens in order to wash the outside of the windows, that act does not constitute entry of the house. If in this case there had been *no* screen on the window, the majority does not dispute that defendant's unsuccessful efforts to open the window would have been simply an *attempted* burglary. That should also be the conclusion when, as here, a defendant removes the screen but is unable to open the window behind the screen to gain entry into the home.

That conclusion is consistent with the Legislature's purpose in requiring an entry as an element of burglary. As I have explained, an intruder who gains entry into a dwelling poses a danger to the occupants' personal safety, increasing the risk of a violent encounter. But someone who, as in this case, removes a window screen but remains *outside* the closed window because he cannot open it, presents less of a danger to the occupants than one who opens the window and climbs into the house. Unlike the majority, I would hold that defendant committed not burglary but *attempted* burglary. In my view, that conclusion best effectuates the burglary statute's legislative intent.[1]

---

[1] The majority broadly asserts that my conclusion "is inconsistent with a substantial majority of the California and out-of-state decisions" cited in the majority opinion. (Maj. opn., *ante*, at p. 15, fn. 7.) Hardly.

Five cases the majority cites (*People v. Mazer* (1994) 208 A.D.2d 956 [617 N.Y.S.2d 892]; *State of Iowa v. Conners* (1895) 95 Iowa 485 [64 N.W.2d 295]; *Collins v. Commonwealth* (1912) 146 Ky. 698 [143 S.W. 35]; *State v. Henderson and Younger* (1908) 212 Mo. 208 [110 S.W. 1078]; and *State v. Simpson* (R.I. 1992) 611 A.2d 1390) have no bearing on this case. In *Mazer* the issue was whether the evidence was sufficient to show that the defendant in that case intended to steal from the house he burglarized, and in the other four cases the issue was whether a "breaking" had occurred. In none of those cases was the definition of the term "enter" at issue, as it is here.

The majority mentions three other cases (*Bowers v. State* (1982) 164 Ga.App. 462 [297 S.E.2d 359, 360]; *State v. Jenkins* (Mo.Ct.App. 1987) 741 S.W.2d 767; *People v. Wise* (1994) 25 Cal.App.4th 339 [30 Cal.Rptr.2d 413]) holding that an entry through a closed door into an enclosed porch is a burglary. I see no conflict between those holdings and my conclusion here. Nor do I see any inconsistency between my conclusion and the *result* in *People v. Moore* (1994) 31 Cal.App.4th 489 [37 Cal.Rptr.2d 104] (upholding a burglary conviction of a defendant who opened a screen door and thrust a tire iron through the plane of the wooden door behind it), although certain language in *Moore*'s cursory discussion on the issue of entry appears contrary to my views in this case.

In support of its holding, the majority also cites two Kansas cases (*State v. Crease* (1982) 230 Kan. 541 [638 P.2d 939]; *State v. Gatewood* (1950) 169 Kan. 679 [221 P.2d 392]) and two Texas cases (*Woods v. State* (Tex.App. 1991) 814 S.W.2d 213; *Ortega v. State* (Tex.Crim.App. 1981) 626 S.W.2d 746) that appear at first glance to be contrary to my conclusion here. I find them unpersuasive because they contain only the barest analysis and they do not at all consider the entry requirement's purpose of preventing violent encounters

## II

Instead of relying on the ordinary aids used in statutory construction, such as dictionary definitions and the common law, the majority concocts a definition of its own. According to the majority, an intruder crosses the "outer boundary" of a building simply by being in "an area into which a reasonable person would believe that a member of the general public could not pass without authorization." (Maj. opn., *ante*, at p. 11.) That *might* be a reasonable definition if the Legislature had said so. But it did not. Instead, it required that the defendant *enter* the building. Crossing a building's "outer boundary" is not the same as entering it.

## III

To commit a burglary in California one must enter a building with the requisite intent. The ordinary meaning of "enter" is a movement by an intruder (or an instrument wielded by an intruder) *inside* the building. This is consistent with the burglary statute's underlying purpose of deterring violent confrontations between intruders and occupants of buildings. Instead of embracing this straightforward definition, however, the majority adopts a complex formula that relies on outer boundaries, reasonable expectations, and "authorization" to "pass."

This is a relatively simple case. The defendant set out to break into a house to steal something inside. He encountered a double barrier: a screen and a window. He succeeded in getting through the first barrier but not the second, and thus failed to "enter" the house within the meaning of the

---

between the intruder and the building's occupants. Moreover, courts in other states have reached results contrary to those decisions, which reflect the views of the majority in this case. (*State v. McCall* (1843) 4 Ala. 643 [no entry when the defendant broke open the shutters of a window and put his hand inside them, but outside the glass]; *Minter v. State* (1903) 71 Ark. 178 [71 S.W. 944, 945] [same]; *State v. Carter* (Mo.Ct.App. 1976) 541 S.W.2d 692 [no entry when the defendant opened a latched screen door but was unable to get within an inner door]; accord, *State v. Pigques* (Mo. 1958) 310 S.W.2d 942.)

Finally, the majority cites *People v. Nible* (1988) 200 Cal.App.3d 838 [247 Cal.Rptr. 396], a California Court of Appeal decision. *Nible* addresses the question of whether an entry occurs when a defendant goes into the area between a screen and an *open* window, unlike this case, where the window was closed. I express no view on whether the result in *Nible* is correct. I note, however, that *Nible* defines the term "enter" as passing through a structure, the composition of which "is such that a reasonable person would expect some protection from unauthorized intrusions" (*id.* at p. 844), a definition the majority rejects as unsound. (Maj. opn., *ante*, at pp. 11-12.)

burglary statute. He is therefore guilty not of burglary but of *attempted* burglary, as the Court of Appeal held. Accordingly, I would affirm the Court of Appeal's judgment.