[No. C001729. Third Dist. Apr. 18, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM L. NIBLE, Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and David Y. Stanley, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roger E. Venturi and Alison Aleman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DEEGAN, J.\***—In this case of first impression, we hold the penetration of a window screen but not the window itself constitutes a burglarious entry.

---

\*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

Defendant was convicted following a jury trial of first degree burglary (Pen. Code, §§ 459; 460, subd. 1).[1] In addition, defendant admitted an allegation he had been convicted of a prior serious felony (assault with intent to commit rape, § 220), within the meaning of section 667, subdivision (a). On appeal, he contends (1) he was guilty at most of attempted burglary because no entry occurred and (2) the court erroneously admitted evidence of other crimes. We disagree and shall affirm.

## I

In the early morning hours of April 17, 1986, Mary Rice was asleep with her young son in the bedroom of her Sacramento apartment. Before going to bed, Rice left the bedroom window open about an inch-and-a-half. Sometime between 1:00 and 1:30 a.m., she was awakened by a loud noise caused by something banging against her window. Rice looked out through the window and noticed the window screen was in place. She also noticed defendant on the ground below the window, lying on his back in the fetal position.

Rice hurried to the kitchen where she called her husband on the telephone. She told him to call the sheriff. She then unplugged the telephone and returned with it to the bedroom. As she entered the room, she heard the screen being pulled back from the window. Rice pushed aside the curtains and encountered defendant, who had pulled back part of the screen and crawled underneath it so that his face was about two to three inches from the window. Rice slammed the window shut and yelled in a deep voice. Defendant ran away but was soon captured by sheriff's officers.

Rice described her bedroom window as consisting of two panels, each three feet wide and four feet high, sitting three feet above the ground. Only one of the panels could be opened, by sliding it horizontally. The frames of both panels and the window screen were aluminum and rested within a larger aluminum frame that sat inside the wall. The window screen rested in a slot one-quarter inch from the window and did not have any protuberances to facilitate its removal from the exterior of the apartment. Between the time of the incident and trial, Rice attempted to remove the screen from outside her apartment; she was successful only by sliding a screwdriver under the screen and lifting the screen outward.

---

[1] Unless otherwise indicated, further statutory references are to the Penal Code.

There was no evidence defendant touched Rice's window or crossed the boundary formed by the window into Rice's bedroom.

## II

Defendant contends the trial court erred both by denying his motion for judgment of acquittal and in its instructions on the entry element of burglary. Defendant moved under Penal Code section 1118.1 for judgment of acquittal on the ground there was no evidence of burglarious entry. The court denied the motion. Later, the court instructed the jurors they could find an entry if they believed a part of defendant's body or a tool or instrument used by him penetrated ". . . the area inside where the screen was normally affixed in the window frame in question."[2] The trial court did not err.

"Every person who enters any . . . apartment . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (§ 459.) Entry occurs at the moment any part of the person's body, or a tool or instrument wielded by the person, is inside the premises. (*People* v. *Failla* (1966) 64 Cal.2d 560, 569 [51 Cal.Rptr. 103, 414 P.2d 39]; *People* v. *Osegueda* (1984) 163 Cal.App.3d Supp. 25, 31 [210 Cal.Rptr. 182]; *People* v. *Walters* (1967) 249 Cal.App.2d 547, 551 [57 Cal.Rptr. 484].) Because the common law requirement of breaking was eliminated at the time of the codification of section 459, ". . . it no longer matters whether a person entering a house with larcenous or felonious intent does so through a closed door, an open door or a window." (*People* v. *Gauze* (1975) 15 Cal.3d 709, 713 [125 Cal.Rptr. 773, 542 P.2d 1365]; fn. omitted.)

No California authority has considered whether the penetration of a window screen, without penetration of the plane formed by the window beyond, constitutes an entry within the meaning of section 459. Defendant contends the correct analysis to determine whether a burglarious entry has occurred is whether the "air space" of a protected structure has been penetrated by a part of the defendant's body or an instrument or tool wielded by him. (See *People* v. *Ravenscroft* (1988) 198 Cal.App.3d 639, 643-644 [243

---

[2] The full instructions on entry were as follows: " 'Any kind of entry, partial or complete, direct or indirect, will satisfy the element of entry. [¶] The entry may be made by any part of the body or by the use of an instrument or tool. [¶] In order for there to have been an entry, a part of the defendant's body or some instrument, tool or other object under his control must have penetrated the area inside where the screen was normally affixed in the window frame in question.' "

Cal.Rptr. 827] [burglarious entry occurred when defendant penetrated the air space of an automatic teller machine (ATM) with a stolen ATM card]; *People* v. *Osegueda, supra,* 163 Cal.App.3d Supp. at p. 32 [burglarious entry consisted of penetration of air space of a store with a drilling tool].) The "air space" analysis of *Ravenscroft* and *Osegueda* does not necessarily lead to the result defendant suggests. Rather, it is reasonable to conclude that a window screen contains the outer boundary of a building's air space, especially when, as here, the window itself was left open.[3] However it might be applied here, in our view the "air space" test, although useful in some situations, is inadequate as a comprehensive test for determining when a burglarious entry occurs.

■ Rather, a more comprehensive test is suggested by the California Supreme Court's analysis in *People* v. *Gauze, supra,* 15 Cal.3d 709. " 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.' Section 459, in short, is aimed at the danger caused by the unauthorized entry itself." *(Id.,* at p. 715, quoting *People* v. *Lewis* (1969) 274 Cal.App.2d 912, 920 [79 Cal.Rptr. 650].)

■ As the burglary statute is designed to protect against unauthorized entry and its attendant dangers, the ultimate test of whether a burglarious entry has occurred must focus on the protection the owners or inhabitants of a structure reasonably expect. The proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions. A structure with a locked door or window clearly affords a reasonable expectation of protection from invasion. But even an open door or window affords some expectation of protection from unauthorized intrusion because reasonable persons understand the social convention that portals may not be crossed without permission from the structure's owner.

---

[3] One authority suggests the test to determine if an entry has been effected is whether any part of the defendant's body passes the line of the threshold of the building. (2 Wharton, Criminal Law (14th ed. 1980) § 332, p. 202.) However, because of the imprecision of the term, this analysis is often no more helpful than the "air space" test. It can be argued with equal force that the threshold of a building is formed at its window screens as it can that the threshold is formed at the building's windows. Both the window and the window screen form boundaries separating the interior of the dwelling from the great outdoors.

Thus, the focus of the question whether the penetration of a window screen constitutes a burglarious entry must be on whether a reasonable person would believe a window screen provides some protection against unauthorized intrusions. The answer is unequivocally in the affirmative. "The opening of a screen door or window is deemed a burglarious breaking, . . . In such cases the screen door [or window] is not to be considered as a mere protection against flies, but rather as a permanent part of the dwelling. The holdings proceed, it would seem, on the grounds that the screen door [or window] is a part of the house on which the occupants rely for protection and that to open such a door [or window] is a violation of the security of the dwelling house which is the peculiar gravamen of a burglarious breaking." (13 Am.Jur.2d, Burglary, § 19, p. 331.) This analysis is especially apposite to the instant case, where the window screen was affixed in a slot in the frame with no handle or other device to facilitate its removal from the exterior of the apartment. We hold, therefore, that when a screen which forms the outer barrier of a protected structure is penetrated, an entry has been made for purposes of the burglary statute.

The purposes of the burglary laws are best served by our holding the penetration of a window screen constitutes entry within the meaning of section 459. As noted above, the burglary law protects against the dangers caused by unauthorized entry. The inhabitants of a building are just as likely to react violently to an intruder's penetration of their window screen as to the penetration of the window itself. In this case, Rice slammed her window closed when she discovered defendant crawling under the screen. Had she been armed, or had she reacted differently to that frightening specter, the situation might indeed have erupted into violence.[4]

Our decision is in accord with the opinions of other states. (See, e.g., *Collins* v. *Commonwealth* (1912) 146 Ky. 698 [143 S.W. 35, 36-37]; *State* v. *Henderson* (1908) 212 Mo. 208 [110 S.W. 1078, 1079]; *State* v. *Conners* (1895) 95 Iowa 485 [64 N.W. 295].) Kansas has twice grappled with this question. Kansas, like California, defines burglary as entering a building

---

[4] The reasonable expectation test to determine the occurrence of a burglarious entry conforms to the common law definition of "building" for purposes of the burglary statute. In *People* v. *Brooks* (1982) 133 Cal.App.3d 200, 202 [183 Cal.Rptr. 773], the court considered whether a loading dock, enclosed on two sides by chain link fence which stopped short of the roof by one foot, constituted a "building" within the meaning of section 459. Recognizing the legislative intent of the statute is to extend protection, the court held the dock was a protected building. The court reasoned the correct test to determine if a structure falls within the statutory definition is whether its walls ". . . act as a significant barrier to entrance without cutting or breaking." (*Id.,* at p. 206.) The cutting or breaking test recognizes the reasonable expectation of a property owner or inhabitant that if one defines one's living or storage space utilizing tangible materials, one reasonably expects intruders will not penetrate that space without authorization.

with the intent to commit a felony or theft. (Kans. Stat. Ann. 21-3716.) In *State* v. *Crease* (1982) 230 Kan. 541 [638 P.2d 939], the defendant removed a storm window from a residence but did not actually raise or disturb the inside window before he was frightened away. The court held the invasion of the space between the outer storm window and the inner window constituted an entry within the meaning of the statute. (638 P.2d at p. 940; see also *State* v. *Gatewood* (1950) 169 Kan. 679 [221 P.2d 392, 396].)

Because we conclude the penetration of a window screen constitutes entry within the meaning of section 459, we hold the trial court did not err either in denying defendant's motion for judgment of acquittal or in its instructions on entry.

### III

Defendant next contends the trial court erroneously permitted the introduction of evidence of his commission of other crimes. We disagree.[5]

Prior to voir dire, defendant moved to exclude prior crimes evidence per Evidence Code section 352. The trial court preliminarily ruled the evidence inadmissible on the issue of identity but reserved ruling on the admissibility of the evidence on the issue of intent until the close of the prosecution's case-in-chief.

During trial, defense counsel elicited testimony from one of the arresting officers that defendant was so intoxicated directly after the commission of the instant offense that he had trouble standing up. Soon thereafter, the trial court denied defendant's motion to exclude the other crimes evidence on the issue of intent. The court explained the evidence of defendant's intoxication made his intent ambiguous—it could be argued he was so intoxicated that he was simply looking for a place to sleep off his drunk or he was mistaken about his whereabouts or he was a Peeping Tom. The court concluded the probative value of the other crimes evidence outweighed its potential to cause prejudice.

The trial court thereafter took judicial notice of defendant's guilty plea in November 1983 to section 220 (assault with intent to commit rape). The court also permitted the introduction of the testimony of the assault victim that defendant entered her open bedroom window in the middle of the night, pulled down her underwear and placed his hand on her vagina before

---

[5] The People contend defendant may not object to the admission of other crimes evidence because he committed the instant offense after the operative date of Proposition 8 (Cal. Const., art. I, § 28). We have previously rejected this argument and will not reconsider it here. (See *People* v. *Scott* (1987) 194 Cal.App.3d 550 [239 Cal.Rptr. 588].)

she awakened and scared him away. Finally, the court permitted the testimony of another woman that defendant removed her bedroom window screen in the middle of the night, reached through the window and touched her shoulder; defendant kept moving toward her, although she screamed, until her daughter entered the room and he ran away.[6] The trial court repeatedly instructed the jurors they were to consider the other crimes evidence solely for its relevance to the issue of defendant's intent.

■ Evidence of the commission of other crimes by a criminal defendant is admissible if relevant to prove some fact other than the defendant's disposition to commit such acts. (Evid. Code, § 1101, subd. (b).)[7] As other crimes evidence tends to be highly prejudicial, we must scrutinize its admissibility with great care. (*People* v. *Thompson* (1980) 27 Cal.3d 303, 314 [165 Cal.Rptr. 289, 611 P.2d 883].) Other crimes evidence is circumstantial in nature, thus three requirements of admissibility must be met: (1) the fact sought to be proved must be material, (2) the other crimes evidence must tend to prove or disprove the material fact, and (3) the admission of the other crimes evidence must not violate any extrinsic policy requiring exclusion. (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1136 [240 Cal.Rptr. 585, 742 P.2d 1306]; *Thompson, supra,* 27 Cal.3d at p. 315.)

A. *Materiality*

■ In order to satisfy the requirements of materiality, the fact sought to be proved must be either an ultimate fact (such as an element of the offense) or an intermediate fact from which the ultimate fact may logically and reasonably be inferred. (*Thompson, supra,* 27 Cal.3d at p. 315, fn. 13.) There can be no doubt that intent was an ultimate fact in defendant's prosecution, as the specific intent to commit theft or some felony is an element of the crime of burglary. (§ 459.) However, for the ultimate fact to be material it must be actually in dispute or at issue; the defendant's not guilty plea in itself does not place all elements of the crime at issue. (*Thompson, supra,* 27 Cal.3d at p. 315.)

Defendant argues he did not place his intent at issue because he did not testify, because although he elicited testimony that he was intoxicated at the

---

[6] The trial court excluded evidence of a third prior offense, where defendant entered another home in the middle of the night but was chased away. As he fled, defendant dropped a sexually-oriented magazine. When arrested for that offense, defendant allegedly made spontaneous statements that he "gets off on sexual material and that he has sexual fantasies involving killing and murder and blood."

[7] The general rule is that evidence of specific instances of a defendant's conduct is inadmissible to prove his or her conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) Subdivision (b) of Evidence Code section 1101 is an exception to subdivision (a) of that statute. (*People* v. *Willoughby* (1985) 164 Cal.App.3d 1054, 1061 [210 Cal.Rptr. 880].)

time of the commission of the offense that testimony has nominal relevance to the question of intent, and because in his closing argument he conceded intent was not at issue. We disagree with defendant's analysis. There is no requirement that defendant himself place the ultimate fact at issue; rather, ". . . the crux of the materiality requirement is the need to establish the legitimate importance of the fact to the People's case, and not necessarily the exact manner in which the issue became important." (*People* v. *Scott* (1980) 113 Cal.App.3d 190, 200 [169 Cal.Rptr. 669] [intent placed at issue by codefendant's testimony].) Although defendant conceded at the close of the evidentiary stage of the trial that intent was not at issue, he never made that concession earlier. (See *Willoughby, supra,* 164 Cal.App.3d at pp. 1064-1065.) Rather, he elicited evidence that he was so intoxicated he could not even stand at the time the offense was committed. That evidence was extremely relevant to the issue of his intent. In the absence of further evidence on the issue, defendant would have had a persuasive, perhaps compelling, argument that his intent was innocent. Thus, defendant's intent was at issue and was, therefore, a material fact.

## B.  *Relevance*

█  Defendant next argues the other crimes evidence was inadmissible because the threshold test that there be "striking similarities" between the other crimes and the instant offense was not met. However, the striking similarities, or "common marks," threshold test has generally been applied in cases where the material fact is the perpetrator's identity, rather than his intent. (See, e.g., *People* v. *Alcala* (1984) 36 Cal.3d 604, 632-634 [205 Cal.Rptr. 775, 685 P.2d 1126]; *People* v. *Thornton* (1974) 11 Cal.3d 738, 755-756 [144 Cal.Rptr. 467, 523 P.2d 267], disapproved on another ground, *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Haston* (1968) 69 Cal.2d 233, 245-247 [70 Cal.Rptr. 419, 444 P.2d 91]. But see *People* v. *Guerrero* (1976) 16 Cal.3d 719, 728-729 [129 Cal.Rptr. 166, 548 P.2d 366].) Indeed, in such cases the other crimes evidence will be relevant to identity only if the other crime is sufficiently *distinctive* and similar in its *distinctiveness* to the charged crime, or if the crimes share a large number of less distinctive common marks, that a proper inference may be drawn the same person committed both crimes. (See *Thornton, supra;* Jefferson, Synopsis of Cal. Evidence Law (1985) § 33.7, p. 547.)

However, when the other crime evidence is admitted solely for its relevance to the defendant's intent, a *distinctive* similarity between the two crimes is often unnecessary for the other crime to be relevant. Rather, if the other crime sheds great light on the defendant's intent at the time he committed that offense it may lead to a logical inference of his intent at the time

he committed the charged offense if the circumstances of the two crimes are substantially similar even though not distinctive. (See *People* v. *Pendleton* (1979) 25 Cal.3d 371, 376-377 [158 Cal.Rptr. 343, 599 P.2d 649] [other crimes evidence relevant to intent where the earlier and charged offenses shared the common characteristics of nighttime entry through locked doors, attacks on the victims, defendant's familiarity with the victims, and his discussion with them of himself and/or his parents]; *People* v. *Huber* (1986) 181 Cal.App.3d 601, 622 [227 Cal.Rptr. 113] [other crimes evidence relevant to burglarious intent where other charged crimes shared common feature of nighttime entry through a window]; *People* v. *Scott, supra,* 113 Cal.App.3d at pp. 198, 200-201 [other crime evidence relevant to intent where other and charged offenses shared common characteristics that the robber used a confederate and wielded a knife].)

Our Supreme Court has never held that other crimes evidence is admissible to prove intent only if the prior and charged offenses share some distinctiveness in addition to their substantial similarity to one another. It is true the higher court applied the "common marks" analysis in *People* v. *Guerrero, supra,* 16 Cal.3d 719, on the question whether a prior offense was relevant to the defendant's intent at the time of the charged offense. However, although the *Guerrero* court mentions the lack of distinctiveness of the crimes, the main problem in that case was that the number of dissimilarities between the crimes far outweighed the similarities. (See *id.,* at p. 729.)[8]

An example best illustrates the irrelevancy of distinctiveness to the chain of inferential reasoning leading from a prior crime to the defendant's intent during the charged crime. Had defendant used a blow torch to remove the window screens of his prior two victims, and had there been evidence of the use of a blow torch on Rice's window screen, then the *distinctiveness* of defendant's method of entry would be highly probative on the issue of the identity of the person who entered Rice's apartment. However, where the issue is intent, rather than identity, the evidence of blow torch entry adds little or nothing to the determination of defendant's intent on either occasion.

In this case, distinctiveness is irrelevant to the chain of inference leading from defendant's prior crimes to his intent at the time he committed the

---

[8] In *Thompson,* the Supreme Court explained that *Guerrero,* relied on by defendant, is an example of a case where similarity between the other crime and the charged offense was ". . . necessary to bridge the gap between other crimes evidence and the material fact sought to be proved." (*Thompson, supra,* 27 Cal.3d at p. 319, fn. 23.) In *Guerrero,* evidence of a prior rape was admitted in the defendant's prosecution for murder. Although both the rape and murder victims were teenage girls picked up by the defendant and his friends while "cruising," there was no evidence of a sexual assault of the murder victim. (16 Cal.3d at pp. 722-723.) Using the "common marks" analysis, the court held the prior rape evidence inadmissible to prove identity or intent to commit rape because the crimes were not substantially similar. (*Id.,* at pp. 725, 727-729.)

instant offense. In the prior crimes, defendant entered the open bedroom windows of women at night after removing their window screens. During one of the crimes, he placed his hand on the victim's vagina. During the other, he touched the victim on the shoulder and continued to move toward her, although she screamed, until another member of the woman's household scared him away. Neither crime is so distinctive that it gives rise to the inference defendant was the same person who entered Rice's apartment. However, both prior offenses give rise to a strong inference defendant intended to rape the victims or to commit some other felonious sexual crime. In the instant case, defendant was caught in the midst of the same preparatory acts used during the commission of the earlier offenses. Although the circumstances were not distinctive, they nevertheless shared substantially similar characteristics to warrant the inference defendant's intent was the same on each of the three occasions. The prior offenses are therefore substantially relevant to the material fact of defendant's intent at the time of the commission of the instant offense.

## C. *Exclusionary Policies*

■■ Finally, we conclude admission of the other crimes evidence does not violate any public policy requiring exclusion. Two such policies are the "rule of necessity"—that evidence merely cumulative is inadmissible— and the rule of Evidence Code section 352 that the probative value of the evidence must outweigh its prejudicial effect. (*Thompson, supra,* 27 Cal.3d at pp. 316-318.)

Defendant argues the other crimes evidence was merely cumulative because the evidence of his surreptitious nighttime entry through a window, combined with his subsequent flight, in itself was sufficient to demonstrate his burglarious intent. However, surreptitious nighttime entry and flight upon discovery are entirely consistent with an intoxicated person's bumbling attempt to find his own home or a place to sleep off his drunk. Thus, the other crimes evidence was not merely cumulative.

Next, defendant suggests the other crimes evidence, although probative, was nevertheless too prejudicial because it involved sex offenses and because the trial court failed to inform the jury defendant was convicted of a crime after entering the second other-crime victim's residence. The probative value-prejudicial effect determination is committed to the trial court's discretion. (Evid. Code, § 352; *Willoughby, supra,* 164 Cal.App.3d at p. 1067.) The record reveals the trial court's thoughtful and reasoned analysis of the danger of prejudice inherent in the evidence of these other crimes. We perceive no abuse of discretion. As to defendant's contention the trial court erred in failing to admit evidence of his conviction based on his entry of the

second other-crime victim's residence, we note simply the evidence of the second conviction was excluded because defendant refused to stipulate to admit a certified copy of the conviction. Thus, to the extent this may have been error, it was invited.

We hold the trial court did not err in admitting evidence of other crimes committed by defendant.

### CONCLUSION

The judgment is affirmed.

Sparks, Acting P. J., and Sims, J., concurred.