Filed 7/30/14  P. v. Brooks CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID ANTHONY BROOKS,<br><br>    Defendant and Appellant. | A137795<br><br>(San Mateo County<br>Super. Ct. No. SC074840) |

Defendant David Brooks entered a home in Redwood City through the front door without permission.  After encountering a resident inside, he apologized and began to exit, but he then entered a second time.  At that point, the resident pushed him outside and locked the door.  Later that day, Brooks attempted to enter another home, this time through a bedroom window, but he was again thwarted after the resident and a neighbor confronted him and called the police.  A jury convicted Brooks of one felony count of first degree burglary based on the first incident and one felony count of attempted first degree burglary based on the second incident.[1]

The trial court sentenced Brooks to a term of 12 years and 8 months.  The sentence included two years for the burglary conviction, eight months for the attempted burglary conviction, and five years each for two prior felony convictions that the court determined

---

[1] The burglary charge was brought under Penal Code section 460, subdivision (a), and the attempted burglary charge was brought under Penal Code sections 460, subdivision (a) and 664.  The jury also found true enhancement allegations that are not at issue.

1

to be "strikes." These prior felonies included a conviction for a 1999 burglary and a conviction for a 2003 attempted robbery.[2]

On appeal, Brooks contends that his convictions must be reversed because the trial court erred by admitting evidence about the 1999 burglary under Evidence Code section 1101, subdivision (b)[3] and by later failing to instruct the jury to disregard that evidence under section 403, subdivision (c)(2). He argues that (1) facts proving the materiality of the evidence were never established; and (2) the evidence was cumulative and otherwise more prejudicial than probative under section 352. We are not persuaded and affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

### A. The Burglary.

Around 3:00 p.m. on September 7, 2011, Julianne R. was home alone in her kitchen when she heard the front door open. She walked toward the door and saw that a man—later identified as Brooks—had advanced roughly two feet into her living room. She had never seen Brooks before and had not given him permission to enter. Brooks said, "[S]orry, wrong house," and began to exit while closing the door. He then reopened the door and stepped back inside. Julianne testified that Brooks paused at the edge of the carpet and they "kind of looked at each other kind of, like, okay. What is going to happen now?" Julianne became "very scared," pushed Brooks outside, and shut and locked the door. She then reported the incident to the Redwood City police.

### B. The Attempted Burglary.

Later that day at around 3:45 p.m., Patrick H., who lived in a triplex about a mile from Julianne's home, was watching television in his bedroom when he heard someone bang on his front door and ring his doorbell. He walked to the door but did not see anyone. He then returned to his bedroom and saw a face through the window. He

---

[2] The prior convictions were found to qualify as strikes under Penal Code sections 1170.12 and 667, subdivision (a).

[3] All further statutory references are to the Evidence Code unless otherwise noted.

2

noticed the window screen moving but could not see whether the person's hands were touching the screen.

Patrick walked outside, where he saw Brooks standing in front of the bedroom window. At trial, Patrick testified that Brooks was holding a stick and that the stick was also protruding from the window screen. Patrick admitted, however, that at the preliminary hearing he had testified that Brooks was about five feet from the window and that the stick was not in Brooks's hand but was in the window.

Patrick testified that he asked, "[W]hat the fuck are you doing?" and that Brooks responded, "[N]othing. . . . I'm just climbing your tree." Brooks, who was not in a tree, then began to walk away. A neighbor of Patrick's testified that he heard Patrick ask Brooks, "What are you doing in front of my window?" and that Brooks responded, "[Y]ou ain't found me in front of your window."

Patrick called 911 and followed Brooks down the street. Patrick's neighbor pursued Brooks in the neighbor's car and used it to block him from escaping. The police arrived and detained Brooks. They then contacted Julianne, and she walked a few blocks from her home to identify him.

At a pretrial hearing, it was revealed that Brooks had previously lived in the same triplex in which Patrick was residing at the time of his encounter with Brooks.

C.     *The Evidence Surrounding the 1999 Burglary.*

Before trial, the prosecution moved under section 1101, subdivision (b) to introduce evidence of the circumstances surrounding the 1999 burglary and the 2003 attempted robbery on the issues of intent and absence of mistake. The motion stated that in 1999, Brooks entered the backyard of a private residence, attempted to pull the screens off a bedroom window and a garage window, and kicked in the garage door. Once inside, he stole a bookshelf stereo, three boom boxes, and a guitar valued at $15,000. The investigation revealed a shoe print on the garage door that was consistent with shoes found during a search of Brooks's residence and a Western Union receipt in the victim's driveway referencing the name David Brooks.

At a hearing on the motion, the trial court discussed with counsel "whether or not there was going to be a perceived necessity to have any live testimony" about the 1999 burglary. Although Brooks did not object to the motion's offer of proof regarding most of the facts surrounding the 1999 burglary, he questioned the prosecution's source of information for its offer that he had attempted to enter the residence through bedroom and garage windows. The court allowed counsel an additional day to contact the victims and an investigator of the 1999 burglary, Officer Donald Bourquin, to determine "the necessity and the length of any live appearances versus stipulations that may be able to be reached" about the 1999 burglary.

After counsel jointly spoke with Officer Bourquin, a subsequent hearing was held. At the hearing, the parties stipulated that during Officer Bourquin's investigation of the 1999 burglary, he noticed that someone had dislodged the screens of a bedroom window and the garage window. Both screens "appeared as if [they were] unable to be pulled out any further." Officer Bourquin had told counsel that he was "100 percent certain" that he asked the victims whether "the screens had been in that condition the morning of the burglary prior to the burglary" and that it was "the usual custom and practice to have people point out things that were significant." The prosecution also informed the court that neither Leonard N. nor his tenant Kenneth S., the victims, had "any independent recollection of the screens."

Brooks objected to the introduction of evidence of the 1999 burglary on the ground that the stipulated testimony failed to establish there would be any admissible testimony about the prior condition of the window screens. He argued that the proffered testimony failed to establish that a window was the entry point during the 1999 burglary and that the evidence was therefore "nothing more than propensity evidence." In response, the prosecution pointed out the additional "geographic connection" between one of the charged offenses and the 1999 burglary: Leonard's 1999 residence is adjacent to the triplex in which Patrick resides, and Brooks lived in this same triplex in 1993 and 1995.

4

The trial court noted that Officer Bourquin's testimony might raise "evidentiary issues . . . as it relates to hearsay." Nonetheless, it decided to "deal with that as . . . necessary at that course of trial." After determining that the 1999 burglary met "all the necessary criteria for both materiality and relevance and passe[d] a [section] 352 analysis," the court admitted evidence of that offense to "demonstrate the defendant's intent and/or absence of mistake" for both of the counts charged. The court excluded evidence of the 2003 attempted robbery, however, finding it was irrelevant to the issue of intent.

At trial, the victims of the 1999 burglary, Leonard and Kenneth, testified that the burglary took place while they were at work. Kenneth testified that he and Leonard always locked the doors and windows before leaving, but neither of them could remember the condition of the screens on the day in question. Officer Bourquin's testimony was largely consistent with his earlier statements to counsel. Although he did not directly testify that he tried to determine the prior condition of the screens, he responded affirmatively when asked if he made "any inquiry of [Leonard and Kenneth] to determine whether or not the window screens had been popped out in the condition that [he] saw them that afternoon, that morning."

## II.
### DISCUSSION

A.  *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of the 1999 Burglary Because the Evidence Was Relevant to Show Brooks's Intent to Commit a Burglary.*

Brooks argues that the trial court erred both by initially admitting the evidence of the 1999 burglary under section 1101, subdivision (b) and by later failing to instruct the jury to disregard it under section 403, subdivision (c)(2). We disagree.[4]

---

[4] The trial court admitted evidence of the 1999 burglary to prove both intent and absence of mistake. In light of our conclusion that the trial court did not abuse its discretion in admitting the evidence to show intent, we need not decide whether the evidence was also admissible on the issue of absence of mistake.

5

Section 1101, subdivision (b) provides that evidence of prior criminal acts is admissible "when relevant to prove some fact," including intent, "other than [a person's] disposition to commit such an act." A prior criminal act is probative of intent if it is "sufficiently similar to the charged offense[s] to support the inference that the defendant probably acted with the same intent in each instance." (*People v. Lindberg* (2008) 45 Cal.4th 1, 23.) In comparison to evidence relevant to other issues, such as identity or planning, the standard for evidence relevant to intent requires "[t]he least degree of similarity." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) Thus, "a distinctive similarity . . . is often unnecessary" when the uncharged offense serves as circumstantial evidence of intent. (*People v. Nible* (1988) 200 Cal.App.3d 838, 848, italics omitted.)

Section 403, subdivision (a) provides that, where the relevance of evidence "depends on the existence of [a] preliminary fact," that evidence is "inadmissible unless the [trial] court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact." Alternatively, the court may conditionally admit the evidence under section 403, subdivision (b), "subject to evidence of the preliminary fact being supplied later in the course of the trial." After admitting evidence under section 403, a court has an obligation under section 403, subdivision (c)(2) to "instruct the jury to disregard the proffered evidence if the court subsequently determines that a jury could not reasonably find that the preliminary fact exists."

We review the trial court's rulings under sections 1101 and 403 for an abuse of discretion. (*People v. Tafoya* (2007) 42 Cal.4th 147, 165; *People v. Kipp* (1998) 18 Cal.4th 349, 369.) Under this standard, a court's rulings on the admissibility of evidence "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Brooks argues that whether he attempted to enter Leonard's residence by removing window screens was a preliminary fact that needed to be resolved under section 403 before the admissibility of other evidence of the 1999 burglary could be established. We conclude, however, that evidence of the 1999 burglary was admissible

6

under section 1101, subdivision (b) regardless of how the window-screen issue was resolved. Despite Brooks's claim to the contrary, the use of a window as a point of entry was not the sole " 'clear connection' " between the 1999 burglary and the charged offenses. (*People v. Poon* (1981) 125 Cal.App.3d 55, 71.) The residence in which Leonard lived in 1999 is adjacent to the triplex in which Patrick resides and in which Brooks lived in 1993 and 1995. The close geographic proximity of these properties and Brooks's connection to them were distinctive circumstances supporting an inference about Brooks's intent.[5] (*People v. Erving* (1998) 63 Cal.App.4th 652, 660-661 [finding sufficient similarity to support an inference of identity based on "proximity to appellant" where each uncharged offense took place "in the immediate neighborhood where appellant lived"]; see also *People v. Petty* (1981) 127 Cal.App.3d 255, 260-262 ["the proximity in time, identity of location, and similarity of conduct [made the prior offense] highly probative"].)

Brooks claims that the prosecution failed to demonstrate the proximity of the residences at trial. We disagree. An exhibit admitted as evidence provided the jury with an aerial view of Patrick's and Leonard's homes. And an officer who responded to Patrick's call testified about the relative locations of Patrick's and Leonard's homes. But even if the prosecution had failed to show the residences' proximity at trial, this failure would have been inconsequential since the evidence of their proximity proffered at the pretrial hearing sufficiently justified the trial court's admission of evidence of the 1999 burglary.

Furthermore, even if the relevance of the 1999 burglary depended on a preliminary determination that Brooks removed window screens at Leonard's residence, sufficient

---

[5] Although the evidence presented at trial established that Julianne's residence was also nearby, that circumstance was not clearly presented to the trial court before it admitted evidence of the 1999 burglary.

circumstantial evidence was presented at trial to support such a determination.[6]  Officer Bourquin testified that his investigation of the 1999 burglary revealed that the screens from two windows "had been slightly pulled ajar from the window frame" by two to three inches.  On redirect examination, he responded affirmatively when asked if he had asked the residents "whether or not the window screens had been popped out . . . that morning."  In addition, Kenneth testified that he and Leonard always kept the doors locked and windows closed when they left.  This cumulative testimony supported a rational inference that Brooks attempted to remove the screens during the 1999 burglary.  Accordingly, the trial court here had no duty to instruct the jury to disregard evidence of the 1999 burglary.

       B.       *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of the 1999 Burglary Because the Evidence Was Not Unduly Prejudicial.*

Brooks next argues that, even if the evidence of the 1999 burglary was properly admitted under sections 1101 and 403, the trial court abused its discretion by not excluding it under section 352 because it was cumulative on the issue of intent.  Again, we disagree.

Section 352 allows a trial court to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Section 352 does not permit the introduction of uncharged acts "to prove something that other evidence showed was beyond dispute."  (*People v. Lopez* (2011) 198 Cal.App.4th 698, 715.)  In particular, where "wholly divergent accounts create no middle ground from which the jury could conclude that [the] defendant committed the proscribed act . . . but lacked criminal intent," uncharged offenses are "merely cumulative" with respect to

---

[6] We are not persuaded by the Attorney General's argument that Brooks forfeited the argument that the jury should have been instructed to disregard the evidence about the 1999 burglary because he failed to move to strike the evidence.  The statute provides that a trial court "shall" exclude such evidence "if the court subsequently determines that a jury could not reasonably find that the preliminary fact exists."  (§ 403, subd. (c)(2).)

intent.  (*People v. Balcom* (1994) 7 Cal.4th 414, 422-423.)  We review rulings under section 352 for an abuse of discretion.  (*People v. Kipp*, *supra*, 18 Cal.4th at p. 371.)

We conclude that admission of the evidence of the 1999 burglary for purposes of proving the attempted burglary of Patrick's residence did not contravene section 352. Brooks argues that his guilt necessarily hinged on whether he entered the residence, and this turned on whether he put the stick in Patrick's bedroom window.  He reasons that the guilty verdict means that the jury necessarily found that there was an entry by putting the stick in the window, and he contends that the introduction of evidence of the 1999 burglary was therefore unnecessarily cumulative and prejudicial because the jury's finding rendered his intent to commit burglary beyond dispute.

We are not persuaded.  To begin with, Brooks's guilt did not necessarily hinge on whether he in fact put the stick in the window.  Attempted burglary does not require an entry, and the prosecution need only demonstrate:  "(1) the specific intent to commit burglary," defined by Penal Code section 459 as intent to commit grand or petit larceny or any felony, and "(2) a direct but ineffectual act toward [the burglary's] commission." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605.)  An act can satisfy the second element even if it is not "the last proximate or ultimate step towards commission of the substantive crime."  (*People v. Staples* (1970) 6 Cal.App.3d 61, 67.)  There is no "litmus-like test" to determine when conduct goes "beyond the preparation stage."  (*Id.* at p. 68.)

Thus, the jury could have found that Brooks took a substantial step towards the completion of a burglary at Patrick's house even if it did not believe that he had put the stick in the bedroom window screen.  Brooks's ringing the doorbell, banging on the front door, and approaching Patrick's bedroom were sufficient to satisfy the requirement of an overt act.  (See *People v. Prince* (2007) 40 Cal.4th 1179, 1257 [sufficient evidence supported a conviction of attempted burglary where defendant "approach[ed] . . . the front door and request[ed] a person who did not reside there" after "examining the backyards of residences in that vicinity"]; see also *People v. Gilbert* (1927) 86 Cal.App. 8, 9-10 [defendant who climbed over a balcony and approached the bedroom doors of a private residence committed an overt act sufficient to establish attempted burglary].)

9

Even if we were to accept that the jury could have found Brooks guilty only if it found he put a stick in the window, such a finding would not have established that Brooks's intent to commit a burglary was "beyond dispute." (*People v. Lopez, supra,* 198 Cal.App.4th at p. 715.) Brooks correctly points out that a window screen is "part of the outer boundary of a building for purposes of burglary." (*People v. Valencia* (2002) 28 Cal.4th 1, 12.) Inserting a stick behind the screen, therefore, would constitute an entry. (*Id.* at pp. 12-13.) But burglary is a specific intent crime, and entry alone does not establish intent to commit burglary. (See *People v. Mejia*, *supra*, 211 Cal.App.4th at pp. 586, 605; see also *People v. Nible*, *supra*, 200 Cal.App.3d at p. 850.) A jury could have believed that after knocking on the front door and ringing the doorbell, Brooks approached the bedroom window with the innocent purpose of attracting the attention of someone inside. Or it could have believed that Brooks put the stick in the window to commit a different crime, such as vandalism, or for no particular purpose at all. Because the evidence did not establish his intent "so conclusively" as to make any other evidence on that issue merely cumulative, the trial court did not abuse its discretion in admitting the evidence of the 1999 burglary under section 352. (*People v. Carter* (2005) 36 Cal.4th 1114, 1150.)

Finally, because we conclude that the trial court properly admitted this evidence under sections 1101 and 352, we reject Brooks's additional claim that the court's ruling violated his right to due process. Adherence to " 'the ordinary rules of evidence' " generally does not violate a defendant's constitutional rights. (*People v. Lindberg*, *supra*, 45 Cal.4th at p. 26.)

### III.
### DISPOSITION

The judgment is affirmed.

_____
Humes, J.

We concur:

_____
Reardon, Acting P.J.

_____
Rivera, J.