Filed 9/30/16  P. v. Kamfolt CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RYAN NATHANIEL KAMFOLT,<br><br>    Defendant and Appellant. | H041642<br>(Santa Clara County<br>Super. Ct. No. C1369061) |

## I.    INTRODUCTION

A jury convicted defendant Ryan Nathaniel Kamfolt of first degree burglary (Pen. Code, §§ 459/460, subd. (a))[1] and found true an allegation that a person was present during the burglary (§ 667.5, subd. (c)(21)).  The trial court found true allegations that defendant had a prior conviction that qualified as a strike (§§ 667, subds. (b)-(i), 1170.12) and a prior serious felony conviction (§ 667, subd. (a)), and an allegation that defendant had served a prior prison term (§ 667.5, subd. (b)).  Defendant was sentenced to a 13-year prison term.

On appeal, defendant contends the trial court abused its discretion by admitting evidence of two prior offenses:  burglary with intent to commit rape and theft

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

(§§ 459/460, subd. (a)) and prowling (§ 647, subd. (h)).  For reasons that we will explain, we will affirm the judgment.

Defendant has also filed a petition for writ of habeas corpus, which this court ordered considered with the appeal.  We have disposed of the habeas petition by separate order filed this day.  (See Cal. Rules of Court, rule 8.387(b)(2)(B).)

## II.    BACKGROUND

### A.    Charged Offense

On March 4, 2013, Kathleen Bracamonte lived in a single-family residence on Southbrook Drive in San Jose with her husband, two adult daughters, and grandson.  Bracamonte's husband was gone that night, and Bracamonte had spent the day doing spring cleaning inside her house.  When Bracamonte went to bed at 11:30 p.m., her bedroom window screen was intact, as were the screens on the kitchen windows, which were closed.  Motion sensor lights outside the house had been working as of a few days before.

Bracamonte fell asleep with the television on, so there was some light in her bedroom.  At some point during the night, she was woken up by a scratching sound on her bedroom window screen.  She assumed it was her cat, and she fell back asleep.  However, she was awakened again by a sound in her room.  She saw defendant, who she did not know, standing near her head.  Bracamonte said, "What?"  Defendant left the bedroom.  He did not say anything and did not try to touch Bracamonte.

Bracamonte followed defendant out of her bedroom and watched him go down the hall, through the dining room, and out the patio doors.  Bracamonte yelled to defendant, telling him to keep running and that she was calling the police.  She watched defendant leave her yard through the gate.  Bracamonte then called the police.

After defendant left, Bracamonte noticed that her kitchen window had been opened and that the screens had been taken off windows in her kitchen and bedroom.  In

2

front of the open kitchen window, a bottle of wood floor cleaner had been knocked into the kitchen sink. Bracamonte's daughter, who had not been home that night, subsequently discovered that two pairs of underwear were missing from the dresser in her bedroom. However, $700 cash was not taken from the drawer, although it appeared to have been moved.

At Bracamonte's residence, officers discovered that the motion sensor lights had been unscrewed. When tightened, the motion sensor lights worked. An officer noticed a smell while processing the scene, and he discovered some feces along the fence line. The officer also found defendant's fingerprints on a set of windows just inside the gate.

Officers set up a perimeter around Bracamonte's neighborhood. An officer positioned at the intersection of Southview Drive and Tennant Avenue noticed defendant exit a side gate of a residence, and he noticed that defendant's clothing matched the description given by Bracamonte. The officer handcuffed defendant and searched him. Defendant had an odor of alcohol on his breath, but "no real strong indicators of being under the influence." Defendant wore a GPS device on his ankle, and he had two pairs of women's underwear in his pants pockets. Bracamonte identified defendant at a show-up.

Defendant's blood was drawn about two and a half hours after his arrest. His blood alcohol content was 0.08 percent. Three hours earlier, defendant's blood alcohol level would have been about 0.134 percent. Defendant's clothing was collected after his arrest. Defendant's underwear contained fresh feces.

Hernando Cardenas lived at the residence on Tennant Avenue where defendant had been taken into custody. Cardenas had known defendant since junior high school, and defendant had been to Cardenas's home in their "high school days." Cardenas had not seen defendant on the night of March 4.

Defendant's mother's residence was located on Southwind Drive, about a quarter of a mile from Bracamonte's house. Some of defendant's belongings were at his mother's residence. Defendant's Dodge Intrepid was located near Bracamonte's

3

residence. Defendant kept some of his belongings at his mother's residence, and he charged his GPS device there, but he would sleep in his car.

Data from defendant's GPS device indicated that defendant had been at Bracamonte's residence from 2:56 a.m. until 3:15 a.m. and that he had been at Cardenas's residence from 3:27 a.m. until 3:54 a.m.[2]

### B. Prior Offenses

#### 1. 2007 Burglary

On August 31, 2007, Marilenis Olivera Lee was living in Campbell. While sleeping in her bedroom that night, she was woken by a noise. She looked out her window and saw defendant grabbing onto the window frame, about to enter her bedroom. Lee screamed, and defendant jumped back outside and ran away. Lee and a neighbor followed defendant, who got into a car. Lee wrote down the license plate number and gave it to the police. That night, an officer contacted defendant at his home, which was also in Campbell, less than two miles from Lee's residence. Defendant had an odor of alcohol on his breath, and a blood draw later revealed his blood alcohol content to be 0.04 percent. Defendant subsequently pleaded no contest to a charge of first degree burglary with intent to commit theft and felony assault with the intent to commit rape.

#### 2. 2003 Prowling

On December 15, 2003, Anthony La Mont Smith was living on Silver Leaf Road near Southbrook Drive and Tennant Avenue in San Jose with his wife, mother-in-law, and teenaged daughter, who knew defendant from school. At about 10:00 p.m. that night, Smith's wife heard an unusual noise, so Smith went outside to look and to take out the

---

[2] In his briefing on appeal, defendant repeatedly asserts that the evidence showed he was inside Bracamonte's house for 20 minutes, citing to the evidence from his GPS device. However, the evidence introduced at trial was that the GPS records showed that defendant was "at" the Bracamonte residence for about 20 minutes. The evidence does not establish that defendant was *inside* the house for that time period.

garbage. As Smith walked down the side of his house, he noticed the silhouette of someone in his yard, which was enclosed by a fence almost seven feet high and a locked gate. He asked, "Who's in my yard?" Defendant, who was standing near his daughter's bedroom window, responded, "It's me, Mr. Smith." Smith had seen defendant walking a dog in the neighborhood about a week earlier. Defendant told Smith he was looking for his cat, but Smith did not see a cat in the yard. Smith asked why defendant had not just knocked on the front door. Smith later noticed that the motion detector light in his backyard had not turned on. He discovered that the light was loose. When he tightened the light, it worked.[3]

### C.    Defense Case

Defendant did not testify or present evidence. His trial counsel argued that defendant lacked the specific intent to commit rape or theft because defendant had been intoxicated. Defendant's trial counsel argued that defendant's behavior had been consistent with intoxication rather than an intent to commit theft or burglary, pointing out that defendant had defecated in Bracamonte's yard, climbed into the house with his GPS device on, taken underwear but not the $700 in the drawer or any other items, gone into Bracamonte's bedroom without touching her or speaking to her, and fled by foot, leaving his car parked outside Bracamonte's house.

### D.    Verdicts and Sentencing

The jury convicted defendant of first degree burglary (§§ 459/460, subd. (a)) and found true an allegation that a person was present during the burglary (§ 667.5, subd. (c)(21)). The trial court found true allegations that defendant had a prior conviction that qualified as a strike (§§ 667, subds. (b)-(i), 1170.12) and a prior serious felony

---

[3] According to the prosecutor's motion in limine, defendant pleaded guilty or no contest to prowling (§ 647, subd. (h)) and trespass with intent to injure the property (former § 602, subd. (j)), but the jury was not told about the convictions.

conviction (§ 667, subd. (a)), and an allegation that defendant had served a prior prison term (§ 667.5, subd. (b)).

At the sentencing hearing, the trial court imposed the four-year midterm for the burglary and doubled it to eight years based on the strike allegation. The trial court imposed a consecutive five-year term for the prior serious felony allegation, but it stayed the term for the prior prison term allegation. Defendant's aggregate prison term was 13 years.

### III.   DISCUSSION

Defendant contends the trial court abused its discretion by allowing the prosecution to introduce evidence of his prior burglary and prowling offenses.

#### A.   *Proceedings Below*

The prosecution filed a motion in limine seeking to introduce evidence of defendant's prior offenses to show his intent in committing the charged offense. The prosecution argued that the prior offenses were admissible under Evidence Code section 1101, subdivision (b) and argued that they were not unduly prejudicial because they were "very similar" to the charged offense and resulted in guilty or no contest pleas.

Defendant filed written opposition, arguing that evidence of the prior offenses was not admissible pursuant to Evidence Code section 1101, subdivision (b) because the prior burglary and prowling offenses were "significantly dissimilar" to the charged offense. Defendant also argued that the trial court should exclude evidence of the prior offenses under Evidence Code section 352.

During the hearing on motions in limine, defendant's trial counsel reiterated her position that the prior offenses were too dissimilar to be admissible to show intent. She noted that during the prior burglary, defendant had entered a bedroom, spoken with the victim, and driven away in a vehicle, whereas during the charged offense, defendant had

6

entered the house through the kitchen or living room and had not fled the neighborhood afterwards, even though his vehicle was parked outside.

The prosecutor argued that the offenses were similar. She pointed out that in the instant case, defendant had scratched at a bedroom window before entering the house, and that defendant was found near his home all three times. The prosecutor also pointed out that in the instant case and in the 2003 prowling case, a motion sensor light had been found unscrewed.

The trial court found that both prior offenses were admissible. The trial court instructed the jury that the prior offense evidence could only be considered only for the limited purpose of determining defendant's intent.

### B.    Analysis

" ' "Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition. . . ." ' " (*People v. Thomas* (2011) 52 Cal.4th 336, 354 (*Thomas*).) Specifically, " '[s]ubdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of [Evidence Code] section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition.' [Citation.] 'Evidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity. [Citations.]' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*).) "To be admissible, there must be some degree of similarity between the charged crime and the other crime, but the degree of similarity depends on the purpose for which the evidence was presented." (*People v. Jones* (2011) 51 Cal.4th 346, 371.) "The least degree of

7

similarity is required to prove intent or mental state." (*Thomas, supra,* 52 Cal.4th at p. 355.)

"In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).)

" ' "There is an additional requirement for the admissibility of evidence of uncharged crimes: The probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury. [Citation.]" ' " (*Thomas, supra,* 52 Cal.4th at p. 354; see Evid. Code, § 352.) " 'Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." [Citation.]' [Citation.] ' "We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352." [Citation.]' [Citation.]" (*Fuiava, supra,* 53 Cal.4th at pp. 667-668, fn. omitted.)

As this court has noted, "Numerous decisions have upheld the admission of prior burglaries on a similar rationale when, as here, a defendant contests the sufficiency of the prosecution evidence to establish the required intent. [Citations.]" (*People v. Rocha* (2013) 221 Cal.App.4th 1385, 1393-1394 (*Rocha*).) In *Rocha*, both the charged burglary and prior burglary "involved defendant's nonconsensual entry into residential garages belonging to complete strangers, the doors of which garages had been left open." (*Id.* at p. 1395.) In the prior incident, the defendant had been in a vehicle and had taken stereo components but not tools that were in the garage, and he had been cooperative when contacted by the police. In the charged incident, the defendant had been on foot, had taken tools, and had been uncooperative. This court found that "[n]one of these

8

distinctions defeats the extraordinary circumstance of having twice entered strangers' garages and carried away property belonging to them." (*Id.* at p. 1396.)

Defendant asserts that the distinctions between the instant case and the two prior offenses were sufficiently dissimilar as to render the prior offenses irrelevant to show his intent. Defendant points out that he did not speak with Bracamonte, whereas he spoke to Smith during the 2003 prowling incident, and that he entered Bracamonte's kitchen window, whereas he entered a bedroom window during the 2007 burglary. Defendant contends the dissimilarities between the current and prior offenses were comparable to the dissimilarities in *People v. Thompson* (1980) 27 Cal.3d 303 (*Thompson*).

In *Thompson*, the court held that evidence of a subsequent robbery had been improperly admitted to show the defendant's intent to steal while committing a special circumstance murder and attempted murder. In the charged offense, the defendant had entered the victims' house, pointed a gun at them, and said he wanted money, but he did not take any money or valuables. He took one victim's car keys, shot both victims, and left without taking the car. (*Thompson, supra,* 27 Cal.3d at p. 311.) In the robbery, the defendant had pointed a gun at restaurant employee and demanded money from the restaurant. When the victim said he could not access the restaurant's money, the defendant instructed the victim to give up his wallet and car keys. (*Id.* at p. 312.) He did not shoot the victim, but he took the victim's wallet and drove the victim's car away, abandoning it down the hill from the restaurant. The California Supreme Court held that the circumstances of the two offenses were insufficiently similar to show that the defendant intended to steal money, car keys, or automobiles. (*Id.* at pp. 320-321.)

Defendant relies on *Thompson* in asserting that the prior offenses could not show his intent was commit rape because he did not touch Bracamonte, which shows that he declined to sexually assault her. He analogizes to the *Thompson* defendant's decision not to take money from the shooting victims. However, as the Attorney General points out, defendant also did not touch the victim of the 2007 burglary. In both instances,

9

defendant entered the victims' bedrooms but fled when they woke up and yelled at him. The evidence supported an inference that in both of those cases, as well as during the 2003 prowling incident, defendant intended to sexually assault the victims but was interrupted—not that he declined to do so.

Defendant contrasts the instant case with *People v. Nible* (1988) 200 Cal.App.3d 838 (*Nible*), in which the defendant was convicted of first degree burglary after he started to enter the victim's bedroom window by pulling back part of the window screen, but ran away after being confronted by the victim. In *Nible*, the prosecution sought to introduce two prior offenses to show the defendant's intent. (*Id.* at p. 846.) One of the prior offenses was an assault with intent to commit rape, to which the defendant had pleaded guilty. In that case, the defendant had entered the victim's bedroom window while she was sleeping, pulled down the victim's underwear and placed his hand on her vagina, but run away after she awakened and scared him. (*Id.* at pp. 846-847.) In a second case, the defendant had removed a woman's bedroom window screen in the middle of the night, reached through the window and touched her shoulder, and run away only after her daughter entered the room in response to her screams. (*Id.* at p. 847.)

The *Nible* court explained that the relevance of the prior offenses did not depend on them sharing any "distinctiveness." (*Nible, supra,* 200 Cal.App.3d at p. 849.) It was sufficient that the prior offenses shared "substantially similar characteristics" to the current offense, particularly the "same preparatory acts," which "warrant[ed] the inference defendant's intent was the same on each of the three occasions." (*Id.* at p. 850.) The court rejected the defendant's claim that the evidence of the prior offenses was "too prejudicial because it involved sex offenses." (*Ibid.*)

The instant case is analogous to both *Rocha* and *Nible*. Similar to those cases, defendant used the same unique means of entry—removal of a window—to commit the current and 2007 burglary, and the circumstances suggested he intended to enter through a window during the 2003 prowling. The evidence also strongly suggested that defendant

10

had unscrewed the motion detector lights in both the current burglary and the 2003 prowling. The fact that the three incidents shared the "same preparatory acts" supported an inference that defendant had the same intent on each of those occasions. (See *Nible, supra,* 200 Cal.App.3d at p. 850.) Other circumstances were also similar. Defendant lived in his car in the same neighborhood as Bracamonte, and he apparently lived near the victims of the prior offenses. Also, at the time of his arrest for the 2007 burglary, defendant appeared to have been drinking alcohol, just as in the current offense.

Defendant points out that during the current incident, he defecated on a lawn and had feces in his underwear, and that he was wearing a GPS device. He asserts these facts make it likely he entered Bracamonte's house while so intoxicated as to lack the intent to steal or commit rape. These arguments go to the weight of the evidence, not the admissibility of the prior offenses. Moreover, in determining the admissibility of prior offenses to show intent, "[t]he question . . . is not the number of points of similarity but their logical relevance to establish the mental element of the charged offense." (*Rocha, supra,* 221 Cal.App.4th at p. 1394.) Here, the shared facts—defendant's nighttime approaches to windows at the victims' homes, his attempts to enter windows at two of the houses, his unscrewing of motion detector lights, and his flight or false statements upon being discovered—had the most logical relevance to his intent in each instance. (See *People v. Jordan* (1962) 204 Cal.App.2d 782, 786-787 [jury may infer intent to commit theft based on entry through a window and flight upon being discovered].)

We conclude that the prior offenses were "sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance," ' " such that the trial court did not abuse its discretion by finding that the evidence was admissible pursuant to Evidence Code section 1101, subdivision (b). (See *Ewoldt, supra,* 7 Cal.4th at p. 402; *Fuiava, supra,* 53 Cal.4th at pp. 667-668.) We next consider whether the probative value of the uncharged offense evidence was " ' "outweighed by the probability that its admission would create a serious danger of undue prejudice, of

11

confusing the issues, or of misleading the jury. [Citation.]" ' " (*Thomas, supra,* 52 Cal.4th at p. 354; see Evid. Code, § 352.)

Defendant contends that "an admission to burglary with intent to rape is extremely inflammatory" and that the 2007 burglary victim's testimony was likely to have aroused an emotional bias against defendant. As the Attorney General notes, the *Nible* court rejected a claim that evidence of prior offenses was "too prejudicial because it involved sex offenses." (*Nible, supra,* 200 Cal.App.3d at p. 850.) Contrary to defendant's claim, the testimony regarding the 2007 burglary was not more inflammatory that the evidence regarding the charged offense. In the 2007 incident, defendant ran away before actually entering the victim's bedroom, whereas in the charged offense, he was standing next to Bracamonte in her bedroom. Further, defendant did not commit a sex offense during the prior burglary; he simply admitted, as part of his plea, that he had that intent. The fact that defendant was convicted of the 2007 burglary lessened the risk that the jury would want to punish defendant for that crime. Additionally, "the trial court took appropriate measures to reduce the risk of undue prejudice," by giving the jury a limiting instruction. (*Fuiava, supra,* 53 Cal.4th at p. 667.) On this record, where the prior offenses were highly probative on the central issue of defendant's intent, the trial court did not abuse its discretion by determining that the probative value of the prior offenses was not outweighed by a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.

## IV.    DISPOSITION

The judgment is affirmed.

12

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:


_____
ELIA, ACTING P.J.


_____
MIHARA, J.


*People v. Kamfolt*
**H041642**